■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN SCIACCA, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered January 28, 1976, convicting him of possession or transportation for the purpose of sale of unstamped or unlawfully stamped packages of cigarettes, as a felony, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain physical evidence. Judgment reversed, on the law, motion granted, and indictment dismissed. Unfortunately, this is again a case where, through an improper search and seizure by tax investigators pursuant to a valid but insufficient warrant, we are constrained to free a defendant who took part in a scheme to sell cigarettes without tax stamps. The facts of this case are set forth at length in the dissenting memorandum. Inasmuch as the evidence at trial shows the defendant's undoubted guilt, most of the possible errors urged by the defendant could not reasonably be considered of a prejudicial nature warranting a new trial (see *People v Crimmins,* 36 NY2d 230, 232). Therefore, the only remaining substantial issue is as to the search and seizure. It is well settled that a search warrant must be particular in its description of the person, premises or vehicle to be searched *(People v Dumper,* 28 NY2d 296). This case is distinguishable from

those cases in which a vehicle search was held to be valid despite the entry of government officials onto private property in order to search a car (see *United States v Taylor,* 428 F2d 515). Here it was a closed building into which the investigators entered. At the time of entry, the van, despite the surveillance, was not in plain sight. The garage was not described in the warrant and the trespass was not authorized. In the light of the facts that the building was surrounded, had only one door, and the drivers had left, no exigent circumstances exist which would validate the search due to the potential mobility of the van (contra *People v Perel,* 34 NY2d 462). Nor does section 474 of the Tax Law empower the warrantless entry. Although the statute authorizes administrative searches of any premises where cigarettes are reasonably believed to be legally or illegally stored, "Nevertheless, the mere existance of a valid regulatory scheme of itself cannot derogate constitutional safeguards against unreasonable searches and seizures. To be considered reasonable that authority must be carefully limited in time, place and scope" *(People v Rizzo,* 40 NY2d 425, 428). The timing of the search herein was clearly unreasonable. Finally, the theory of inevitable discovery does not justify the admission into evidence of the contraband cigarettes. In *People v Fitzpatrick* (32 NY2d 499, cert den 414 US 1033) the Court of Appeals held (p 506): "that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence. (See, e.g., *United States v. Seohnlein,* 423 F. 2d 1051, cert. den. 399 U. S. 913; *Wayne v. United States,* 318 F. 2d 205, cert. den. 375 U. S. 860; *People v. Regan,* 30 A D 2d 983; *People v. Soto,* 55 Misc 2d 219; see, also, *Lockridge v. Superior Ct. of Lost Angeles County,* 3 Cal. 3d 166, cert. den. 402 U. S. 910; Note 43 ALR 3d 385, 404; Maguire, How to Unpoison the Fruit, 55 J. Crim. L. C. & P. S. 307, 313–317; but cf. *United States v. Paroutian,* 299 F. 2d 486, 489 [319 F. 2d 661]; Pitler, 'Fruit of the Poisonous Tree', 56 Cal. L. Rev. 579, 627–630.) In other words, as one commentator put it, the inevitable discovery factor 'permits the government to remove the taint from otherwise poisoned fruit by establishing that the unlawful act from which it resulted was not a *sine qua non* of its discovery.' (Maguire, How to Unpoison the Fruit, 55 J. Crim. L. C. & P. S. 307, 313.)" However, in *Fitzpatrick* the police had lawfully arrested the defendant and had a clear legal right to search the closet in which he was hiding. The police also had both the present intention and the present capability of doing so. In the instant case, while the investigators had the legal right to search the van, they had no legal right to enter the garage to find the van. A warrantless entry is not authorized absent exigent circumstances merely because probable cause exists that a crime is being committed *(Johnson v United States,* 333 US 10; *United States v Jeffers,* 342 US 48; *Vale v Louisiana,* 399 US 30). As the court in *United States v Griffin* (502 F2d 959, 961) said in distinguishing *Fitzpatrick:* "We hold that absent any of the narrowly limited exceptions (See *Katz v. United States,* 389 U. S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)) to the search warrant requirement, police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one. The assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant and had sent an officer on such a mission, would as a practical matter be beyond judicial review. Any other view would tend in actual practice to emasculate the search warrant requirement of the Fourth

Amendment." The *sine qua non* of the discovery of the van, and its search, albeit pursuant to a warrant, was the unauthorized entry into the garage. Rabin, Acting P. J., Titone and O'Connor, JJ., concur; O'Connor, J., with a separate *concurring memorandum.* O'Connor, J., concurs to reverse the judgment, grant the motion to suppress and to dismiss the indictment, with the following memorandum: I concur fully with the majority, but feel constrained to point out that the logical consequence of the dissenting memorandum by my brother Mr. Justice Shapiro would be to seriously minimize, under the facts here presented, the protections of the Fourth Amendment. There is no basis for believing that section 474 of the Tax Law was intended to negate the need for a search warrant. The investigators here in fact believed that a warrant was required and obtained one. Notwithstanding section 474, when there is probable cause to believe that there is illegal activity afoot, a search warrant must first be obtained to conduct the search, absent exigent circumstances, which circumstances are not here present. Shapiro, J., dissents and votes to affirm the judgment, with the following memorandum: In this case the court is reversing the judgment of conviction and dismissing the indictment because it holds that the tangible evidence, the cigarettes seized by the tax investigators, should have been suppressed. I do not believe that under the peculiar facts of this case the defendant is entitled to such a bonanza. Defendant was indicted for the crime of unlawfully possessing, transporting, and selling untaxed cigarettes in violation of article 20 of the Tax Law, as a felony. The indictment was amended at trial to exclude the theory of an actual sale. Tax investigators obtained a search warrant which authorized the search of a specified Dodge van. At 12:50 A.M. on the morning of September 25, 1974 the officers were surveilling a garage where they expected the subject van to arrive carrying untaxed cigarettes. The garage was a one-story brick building, rented at that time by a sewer contracting company for the storage of its equipment. The van pulled up to the garage, driven by an unknown male, followed by the defendant in another car. The two men left their vehicles and opened the garage door, the defendant then drove the van into the building. After about 10 minutes the two men emerged from the building, closed the door and walked away. The investigators kept the garage under surveillance until approximately 4:00 A.M. At that time three of the officers crawled into the building through a missing panel in the door. Once inside the garage they examined the van and found 3,060 cartons of untaxed cigarettes in it. The lessee of the garage, a Mr. Scotti, called by the People as its witness, testified that in August, 1974, he sublet garage space in the building to two men—one named "Frank" and the other this defendant. Thus the latter clearly had a sufficient possessory interest (standing) in the premises to raise the issue of trespass (see *Brown v United States,* 411 US 223). Defendant does not challenge the issuance of the search warrant, only its execution. He contends that the tax investigators, by entering the building in the manner in which they did, engaged in an illegal trespass thus rendering their seizure of the cigarettes subject to suppression because the warrant covered the van, not the garage. The People contend that no search was conducted except as authorized by the warrant and that the officers' entry into the garage was merely a step required to effect the seizure sanctioned by the warrant (analogizing the situation to an execution of an arrest warrant where entry to premises is authorized pursuant to CPL 120.80 [subd 4]), and in any event they contend that even if the warrant did not authorize the entry and there was a technical trespass, the exigent circumstances of the case· made the entry proper (see *People v Perel,* 34

NY2d 462). I do not find it necessary to pass upon the People's contentions for I would affirm the judgment of conviction by reason of the provisions of section 474 of the Tax Law. That section provides, in pertinent part: "The tax commission is hereby authorized to examine the books, papers, invoices and other records of any person in possession, control or occupancy of any premises where cigarettes are *placed, stored, sold or offered for sale * * * as well as the stock of cigarettes in any such premises or vehicle."* (Emphasis supplied.) Here the search and seizure, which the majority holds invalid, was precisely of the stock of cigarettes "placed" or "stored" by the defendant in the "vehicle" for which the tax commissioner's investigators had a valid search warrant. Speaking of this statutory power conferred by section 474 of the Tax Law, the Court of Appeals said in *People v Rizzo* (40 NY2d 425, 428): "The authority to conduct administrative searches and otherwise administer regulatory schemes is predicated on the Legislature's determination that to protect the public interest, particular commodities or endeavors should be controlled. Nevertheless, the mere existence of a valid regulatory scheme of itself cannot derogate constitutional safeguards against unreasonable searches and seizures. To be considered reasonable that authority must be carefully limited in time, place and scope. *We believe that the challenged statute, although constitutional, may only come into operation where there is probable cause to believe that the regulated activity is being conducted at that location.* This is true regardless of whether the premises examined are characterized as commercial or private, or whether the enterprise is operating legally or illegally." (Emphasis supplied.) The court then discussed three common situations, the second of which is clearly applicable to the instant case, since it deals with "where a party is engaging in regulated activity out of premises which are not publicly recognized as those of a dealer in that commodity or service" *(People v Rizzo, supra,* p 429). In such case, the Court of Appeals said (p 429): "However, if the [tax] agency has probable cause to believe that the regulated activity is taking place they may lawfully enter the premises and examine records *and inventory* pursuant to their statutory power." (Emphasis supplied.)* Here, it is clear that the applicable section of the Tax Law came "into operation" because there was "probable cause to believe that the regulated activity [was] being conducted at that location", to wit, the placing and storing of the cigarettes in the particular van in that garage by reason of the averments in the search warrant—the efficacy of which is here conceded. The majority seeks to avoid the impact of section 474 by reading into a sentence in *People v Rizzo (supra)* a requirement that searches thereunder be made only on a warrant for a search of the premises. However, the language it quotes does not support its contention,

* In the *Rizzo* case the court held entry upon and search of the garage improper solely because, as contrasted with the case of *Peeples v United States* (341 F2d 60, cert den 380 US 988), "the agents here did not have information sufficient to form a reasonable belief that the *storage* or sale of cigarettes was being conducted in Rizzo's garage" *(People v Rizzo, supra,* p 429; emphasis supplied). A few paragraphs later on again, Judge Wachtler said (p 430): "It was only after he had entered upon defendant's property and had reached the garage door that he first saw the cigarettes. Had he seen the cigarettes, *or had reason to believe that they were stored in the garage before entering upon the premises, there would have been probable cause to invoke the statute and the search would have been legal.* Absent that probable cause neither the search nor an examination under section 474 of the Tax Law were proper" (emphasis supplied). In our case probable cause is conceded. Hence, the applicability of *Rizzo* to our factual pattern.

for the further exegis of the Court of Appeals contradicts that conclusion because the illustrations it discusses clearly involve entry by investigators into a locked storeroom without a warrant "provided they reasonably believed it contained cigarettes" *(People v Rizzo, supra,* p 429 [citing *United States v Biswell,* 406 US 311 and *Peeples v United States,* 341 F2d 60, cert den 380 US 988]). Thus I am persuaded that under section 474 of the Tax Law, and its interpretations in *People v Rizzo,* the trial court was warranted in denying suppression of the seized cigarettes; but even if that were not the case, I would nevertheless affirm the denial of suppression and the judgment of conviction on the theory of inevitable discovery (see *People v Fitzpatrick,* 32 NY2d 499, cert den 414 US 1033). In that case Chief Judge Fuld said (p 507): "In the present case, it was entirely fortuitous that the police delayed the search of the immediate area where the defendant was discovered until they had begun questioning him and, as a result, very quickly learned where the gun was located." By a parity of reasoning, the connection between the alleged lawless conduct of the officers here and their discovery of the challenged cigarettes had "become so attenuated as to dissipate the taint" *(Nardone v United States,* 308 US 338, 341; *Wong Sun v United States,* 371 US 471, 489). In the *Wong Sun* case, the court said, and I find the quotation directly applicable here, that (pp 487–488): "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." Following that rule, Chief Judge Fuld, in *People v Fitzpatrick (supra),* concluded (p 506): "In line with this reasoning, the courts have held that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence." Here the tax investigators would, in any case, absent the alleged illicit conduct, have inevitably gained access to the defendant's truck and been able to execute their search warrant thereon at 6:00 A.M. that same morning, when the lessor of the entire garage, in accordance with his usual practice, came and opened the door to enter it to go to work or, at the worst, whenever the defendant or anyone else drove the truck out of the garage. Since, in view of the defendant's undoubted guilt (see *People v Crimmins,* 38 NY2d 407), the other errors urged by defendant were not of a prejudicial nature, I would affirm the judgment of conviction.