*125 OPINION OF THE COURT
Wachtler, J.
The People appeal from an order of the Appellate Division which reversed a judgment convicting defendant of the felony of unlawfully possessing and transporting untaxed cigarettes. The court below suppressed some 3,000 cartons of untaxed cigarettes that the tax investigators had discovered and seized from defendant’s van. It was here that the investigators had acted improperly when, in the dead of night, they broke into the locked garage where the van was parked. The lone dissenter would have affirmed, reasoning that the instant search and seizure was legitimate under section 474 of the Tax Law and its interpretation in People v Rizzo (40 NY2d 425). In our view, the determination of the majority below was correct.
The New York State Tax Enforcement Bureau received confidential information to the effect that defendant, John Sciacca, was involved in the smuggling of untaxed cigarettes into New York in violation of article 20 of the Tax Law. The informant alleged that the defendant was using a green Dodge van license number 4205KA to transport untaxed cigarettes into this State. A check of official records and communications revealed that defendant had three prior arrests and one conviction to date for cigarette tax violations and that he had been stopped recently by the North Carolina State Police who observed in his green van several thousand cartons of untaxed cigarettes.
Based on this information, the Tax Enforcement Bureau began watching for the defendant’s return. When they sighted the green van they followed it to an address in Brooklyn where the driver, who matched the defendant’s description, was observed removing a box the size and shape of a one-half case of cigarettes from the rear of the van and giving it to an unknown male.
Some 12 days later the tax investigators received further confidential information that defendant planned to drive to North Carolina that day and would return in the evening of September 24, 1974 with a large load of contraband cigarettes. The surveillance team saw defendant hand the driver some papers which appeared to be cigarette order forms and also observed defendant remove three cartons of Kent cigarettes from under the driver’s seat of the truck. The vehicle was *126 then followed to the New Jersey Turnpike where it was seen heading south.
On the strength of this information a search warrant authorizing the search of defendant’s green van was obtained. The tax investigators stationed themselves near the garage where defendant parked his van and waited for the defendant to return. At 12:50 a.m. on the 25th, the van driven by an unknown male double parked outside the garage. The defendant who arrived in a separate car then entered the van and backed it into the garage. The two men emerged a few minutes later, closed and secured the overhead door, and departed.
The tax investigators continued their observation of the garage which was a one-story brick building rented by a sewer contracting company. At 4:00 a.m., the tax investigators moved a loose panel on the door aside and crawled into the garage. They proceeded to defendant’s van and found 3,060 cartons of untaxed cigarettes inside. The investigators remained in the building until approximately 6:00 a.m. when the owner of the sewer contracting company arrived. The investigators identified themselves and showed the search warrant to the lessor of the garage. The cigarettes were subsequently removed and inventoried by the police property clerk.
A motion to suppress was denied after a hearing and, after trial, the defendant was convicted by a jury. On appeal the Second Department reversed on the law concluding that the unauthorized entry into the garage constituted an unreasonable search and seizure and that the instant search was not lawful under the Tax Law or on the theory of inevitable discovery. One Justice dissented on the ground that section 474 of the Tax Law authorizes entry into premises when there is probable cause to believe that the regulated activity is being conducted there. Alternatively, the dissent relied on the inevitability of the discovery of the untaxed cigarettes.
The first issue we must consider is whether the search warrant was properly and lawfully executed under the circumstances. In our view the tax investigators exceeded the authority granted in the warrant. By its terms the warrant authorized the search of "a green Dodge Van bearing New York plate #4205KA * * * [for] * * * untaxed cigarettes and bills or records relating thereto.” Nothing in the warrant *127 authorized the entry into the garage in order to execute the warrant.
 It is clear that a warrant to search a building does not include authority to search vehicles at the premises (People v Hansen, 38 NY2d 17; People v Dumper, 28 NY2d 296). The converse is also true. Authority to search a vehicle does not include authority to enter private premises to effect a search of a vehicle within those premises. The Constitution (NY Const, art I, § 12; US Const, 4th Arndt) requires that a warrant particularly describe the place to be searched and the Criminal Procedure Law provides for the issuance of warrants to search persons, premises or vehicles (CPL 690.15). The fact that premises are generally fixed while persons and vehicles are moveable presents a problem to officers executing search warrants. However, the constitutional mandate of particularity of the place to be searched may not be circumvented by implication as the People urge. We cannot accept the argument that the entry into the private garage was a permissible incident of the right to search pursuant to a warrant. The warrant here authorized the search of a particular van and nothing else. The garage had a structual and functional existence distinct from defendant’s van which should have been recognized by the investigators.
 That is not to say that a vehicle may never be searched while on private property. As we recently decided in People v Farenga (42 NY2d 1092), a vehicle may be searched in the driveway when it does not constitute an invasion of an area where a justifiable expectation of privacy exists. Similarly in United States v Taylor (428 F2d 515) and Peeples v United States (341 F2d 60, cert den 380 US 988) searches of a truck in defendant’s driveway and of defendant’s exposed carport, respectively, were deemed valid. Nor does the holding in United States v Scher (305 US 251) compel a different result. There, prior to any search the defendant admitted hauling bootleg liquor to an investigator who had followed him into an open garage. The garage in the case at bar was unoccupied and locked and defendant was presumably home in bed when the search occurred.
It should be noted that the investigators here were aware of defendant’s use of the garage to secure his vehicle and they could have sought authority to enter the garage. They failed to do so and therefore the unlawful entry into the private garage rendered the subsequent search of the van illegal.
*128 Nor may this entry be justified on the theory of exigency. There was nothing inherent in the situation confronting the investigators which necessitated immediate action. It was the dead of night, the vehicle was in an unoccupied, locked garage which had only one exit and was surrounded by tax investigators ready to prevent the van or its illicit cargo from eluding their grasp.
The People urge that the investigators were authorized to forcibly enter the garage since there was probable cause to believe that the regulated activity (i.e., cigarette storage and sales) was occurring on the premises. This argument is most cogently presented by the dissent below which relies on language in Rizzo (40 NY2d 425, supra) to support the validity of the instant search. Pointing to the second of three common situations likely to involve administrative inspection, the dissent contends that where there is probable cause to believe that the regulated activity is being conducted at that location the agency "may lawfully enter the premises and examine the records and inventory pursuant to their statutory power” (quoting Rizzo, supra, at p 429).
The language quoted should not be construed as sanctioning illegal action by administrative inspectors. We cannot state it more emphatically than we did in Rizzo: "Nevertheless, the mere existence of a valid regulatory scheme of itself cannot derogate constitutional safeguards against unreasonable searches and seizures” (id., at p 428). The actions of the investigators in this case were unreasonable by any standard. The agents had no evidence whatever which would indicate that the garage was a premises where the controlled activity was taking place. The garage was completely distinct, indeed incidental, to any illegal activity.
Regulatory schemes are necessary to insure compliance with health, safety and even revenue codes, however they are not so necessary as to override or bypass constitutional mandates. To be sure, an administrative inspector can demand entry into locked areas which he reasonably believes contain regulated activity (see United States v Biswell, 406 US 311). This does not mean that he has the authority to break and enter. As the United States Supreme Court noted in Colonnade Corp. v United States (397 US 72, 77) our traditions are strongly opposed to using force without definite authority to break into a locked premises. In the instant case there was no authority *129 either in the statute or the warrant to enter forcibly, consequently the search must be voided.
Rather than being analogous to entry permissible to execute an arrest warrant as the People urge, the situation at bar is more akin to the analysis underlying the plain view doctrine, to wit, only when the police are lawfully in a place may the evidence in plain view be utilized. In the administrative context, a prerequisite to the examination of records and inventory is that the inspectors be lawfully on the premises. The determination of whether or not they are lawfully there must be considered in light of conventional search and seizure analysis involving the justifiable expectation of privacy. Clearly, in this case Sciacca had a considerable expectation of privacy in his van which was placed in a completely enclosed, locked garage. This was not an area that could be considered public or open and notorious as in Farenga (42 NY2d 1092, supra); Taylor (428 F2d 515, supra); and Peeples (431 F2d 60, supra).
Finally, we need only consider the claim of inevitable discovery briefly. The theory of inevitable discovery is essentially a safety valve for the exclusionary rule to be used when the constitutional violation is of technical dimension and should not be used to countenance the breaking into a locked garage by administrative investigators.
Accordingly, the order appealed should be affirmed.