THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN SCIACCA, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered April 20, 1976, convicting him of unlawful possession and transportation, for the purpose of sale, of unstamped and unlawfully stamped cigarettes, as a felony, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a

hearing, of defendant's motion to suppress certain physical evidence. Judgment affirmed as to the conviction; judgment reversed as to the sentence, on the law, and case remanded to the Criminal Term for the imposition of a new sentence in accordance herewith. Insofar as it is necessary for the purposes of this appeal, it appears without contradiction on the present record that sometime during the early afternoon of August 13, 1973 two experienced investigators of the New York State Department of Taxation and Finance (Cigarette Tax Enforcement Unit) observed the defendant and one other unloading apparently sealed, "full cases" of name-brand cigarettes from the white Ford van he had been driving, into a garage adjacent to a private residence located at 1458 81st Street in the Borough of Brooklyn. The defendant, a known cigarette smuggler, had been placed under observation by the officers earlier that afternoon and had been followed to the 81st Street address where the afore-mentioned observations took place. The van had been backed into the driveway (but not into the garage) and, according to both officers, had been parked in such a manner that the unloading process was not obscured by either the van or the house. All of their observations were made from the public sidewalk. Armed with the foregoing information and possessed of the knowledge that the only persons who would normally be in possession of "full cases" of cigarettes in New York City would be bonded carriers or cigarette wholesalers, the officers then entered upon the driveway and approached their subjects for the purpose of inspecting the cases pursuant to section 474 of the Tax Law. Upon opening a few of the cartons, the officers found the appropriate tax stamps missing. At this point, the defendant and his companion were arrested. Following the denial of his pretrial motion to suppress the physical evidence, defendant entered his plea of guilty. Unlike our determination in a companion case involving this defendant (*People v Sciacca*, 57 AD2d 846, affd 45 NY2d 122), we believe that the instant motion to suppress the physical evidence was properly denied. In the earlier case, just recently affirmed by the Court of Appeals, the New York State Tax Enforcement Bureau had come into possession of confidential information indicating that the defendant, John Sciacca, was involved in the smuggling of untaxed cigarettes into New York in violation of article 20 of the Tax Law, and that the defendant was using a green Dodge van, license number 4205 KA, to transport the untaxed cigarettes into this State. A check of official records and communications revealed that the defendant had three prior arrests and one conviction for cigarette tax violations and that he had been stopped only recently by the North Carolina State Police, who observed in his green van hundreds of cartons of untaxed cigarettes. Based on this information, officers of the Tax Enforcement Bureau began watching for the defendant's return. When they sighted his green van they followed it to an address in Brooklyn where the driver, who matched the defendant's description, was observed removing a box the size and shape of "a ½ case" of cigarettes from the rear of the van and handing it to an unknown male. Some 12 days later, the tax investigators received further confidential information to the effect that the defendant was planning another trip to North Carolina and that he would return on the evening of September 24, 1974 with a large load of contraband cigarettes. The surveillance team also saw the defendant in the possession of papers which appeared to be cigarette order forms and, at one point, observed the defendant remove three cartons of Kent cigarettes from under the driver's seat of the truck. The vehicle was then followed to the New Jersey Turnpike, where it was seen heading south. On the strength of this information a search warrant authorizing the search of defendant's van was

obtained, whereupon the tax investigators stationed themselves near the garage where defendant had previously parked and waited for his return. At about 12:50 A.M. on the morning of September 25, 1974, the van, now being driven by an unknown male, arrived at the garage and double parked outside. The defendant, who arrived in a separate car, then entered the van and backed it into the garage. The two men emerged a few minutes later, closed the overhead door, secured it and then departed. At this point the tax investigators continued their surveillance of the garage, which was a one-story brick building rented by a sewer contracting company. At or about 4:00 A.M., however, the investigators became impatient and, by moving aside a loose panel on the door, they crawled into the garage. They then proceeded to search the defendant's van, wherein they found 3,060 cartons of untaxed cigarettes. The investigators remained in the building until approximately 6:00 A.M. when the lessor, the owner of the sewer contracting company, arrived. The investigators identified themselves as enforcement officers and exhibited the search warrant for the van. The cigarettes were subsequently removed from the garage and inventoried by the police property clerk. On these facts, we held that the search warrant had been illegally executed and that a warrantless search would not be sustained pursuant to section 474 of the Tax Law (57 AD2d 846, 847, *supra*). Accordingly, we concluded that the physical evidence should have been suppressed and, therefore, reversed the defendant's conviction and dismissed the indictment. The Court of Appeals affirmed, agreeing that the warrant had been illegally executed and stating (45 NY2d 122, 128-129, *supra*): "The People urge that the investigators were authorized to forcibly enter the garage since there was probable cause to believe that the regulated activity (i.e., cigarette storage and sales) was occurring on the premises. This argument is most cogently presented by the dissent below which relies on language in *Rizzo [People v Rizzo,* 40 NY2d 425], *supra,* to support the validity of the instant search. Pointing to the second of three common situations likely to involve administrative inspection, the dissent contends that where there is probable cause to believe that the regulated activity is being conducted at that location the agency 'may lawfully enter the premises and examine the records and inventory pursuant to their statutory power' (quoting *Rizzo, supra,* at p 429). The language quoted should not be construed as sanctioning illegal action by administrative inspectors. We cannot state it more emphatically than we did in *Rizzo:* 'Nevertheless, the mere existence of a valid regulatory scheme of itself cannot derogate constitutional safeguards against unreasonable searches and seizures' *(id.,* at p 428). The actions of the investigators in this case were unreasonable by any standard. *[Here, t]he agents had no evidence whatever which would indicate that the garage was a premises where the controlled activity was taking place. The garage was completely distinct, indeed incidental, to any illegal activity.* * * * Rather than being analogous to entry permissible to execute an arrest warrant as the People urge, the situation at bar is more akin to the analysis underlying the plainview doctrine, to wit, only when the police are lawfully in a place may the evidence in plain view be utilized. *In the administrative context, a prerequisite to the examination of records and inventory is that the inspectors be lawfully on the premises. The determination of whether or not they are lawfully there must be considered in light of conventional search and seizure analysis involving the justifiable expectation of privacy.* Clearly, in this case Sciacca had a considerable expectation of privacy in his van which was placed in a completely enclosed, locked garage. This was not an area that could be considered public or open and notorious as in *Farenga [People*

*v Farenga]*, 42 NY2d 1092, *Taylor [United States v Taylor]*, 428 F2d 515, and *Peeples [Peeples v United States]*, 341 F2d 60, cert den 380 US 988," (emphasis supplied). As contrasted with the foregoing, the investigators in the case at bar clearly had probable cause to believe that the controlled activity was taking place on the premises in question, the garage adjacent to 1458 81st Street. Moreover, the observations on which they relied were all effected without any violation of the defendant's right or justifiable expectation of privacy (cf. *People v Sciacca*, 45 NY2d 122, *supra*). However, although we are in agreement with Criminal Term as to the disposition of the motion to suppress, we are nevertheless constrained to reverse and remand for a new sentence. The imposition of the mandatory sentence for second offenders pursuant to subdivision 2 of section 481 of the Tax Law was erroneous as a matter of law, since the defendant was convicted of unlawful possession and transportation, for the purpose of sale, of unstamped and unlawfully stamped cigarettes as a class E felony. The second offender sentence imposed by Criminal Term was clearly intended to apply only to second misdemeanor offenders under article 20 of the Tax Law, and not to felony offenders, such as the defendant at bar. Subdivision 2 of section 481 of the Tax Law provides, *inter alia:* "Any person other than an agent, who possesses or transports for the purpose of sale any unstamped or unlawfully stamped packages of cigarettes subject to the tax imposed by section four hundred seventy-one of this chapter, or who sells or offers for sale unstamped or unlawfully stamped packages of cigarettes in violation of the provisions of this article, or who wilfully attempts in any manner to evade or defeat the taxes imposed by this article, or the payment thereof, *shall be guilty of a misdemeanor* and upon conviction thereof, for a first offense, shall be sentenced to pay a fine of not more than two thousand dollars, or to be imprisoned for not more than one year, or both, in the discretion of the court; *and for a second offense, shall be sentenced to pay a fine of not less than* five hundred dollars nor more than five thousand dollars, *and to be imprisoned for a definite fixed period which shall be not less than six months and not more than one year. Any person who has previously been convicted two or more times under this section, or who, regardless of any previous convictions, possesses or transports for the purpose of sale twenty thousand or more cigarettes* subject to the tax imposed by section four hundred seventy-one of this chapter in any unstamped or unlawfully stamped packages, or who, regardless of any previous convictions, sells or offers for sale twenty thousand or more cigarettes in any unstamped or unlawfully stamped packages in violation of the provisions of this article, or who, regardless of any previous convictions, wilfully attempts in any manner to evade or defeat the taxes imposed by this article or the payment thereof on twenty thousand or more cigarettes, *shall be guilty of a class E felony"* (emphasis supplied). Titone, J. P., Suozzi, Cohalan and Hawkins, JJ., concur.