*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 3, 2015                105234
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                   MEMORANDUM AND ORDER

JUAN REYNOSO-FABIAN, Also
    Known as CARLOS,
                    Appellant.
_____

Calendar Date:  October 15, 2015

Before:  Garry, J.P., Egan Jr., Rose and Clark, JJ.

_____

        James P. Milstein, Public Defender, Albany (Theresa M.
Suozzi of counsel), for appellant.

        P. David Soares, District Attorney, Albany (Vincent Stark
of counsel), for respondent.

_____

Egan Jr., J.

        Appeal from a judgment of the County Court of Albany County
(Herrick, J.), rendered August 22, 2012, upon a verdict
convicting defendant of the crimes of criminal possession of a
forged instrument in the first degree (10 counts) and willful
possession of cigarettes in packages bearing false, altered or
counterfeited stamps.

        In March 2011, defendant was charged in an amended 13-count
indictment with numerous crimes, including criminal possession of
a forged instrument in the first degree (10 counts) and willful
possession of cigarettes in packages bearing false, altered or
counterfeited stamps.  The charges stemmed from an August 27,

-2-                          105234

2010 investigation and regulatory search of a variety store located on Central Avenue in the City of Albany, during the course of which investigators discovered, among other things, 10 sheets of counterfeit cigarette tax stamps. A search of defendant's vehicle on this date also revealed, among other things, packages of cigarettes bearing counterfeit tax stamps. Thereafter, in November 2011, defendant was charged in a separate indictment with a single count of criminal possession of a forged instrument in the first degree arising out of an October 16, 2011 incident wherein defendant attempted to sell cigarettes bearing counterfeit tax stamps to another local convenience store. The People's subsequent motion to consolidate the indictments was granted, and the count contained in the November 2011 indictment became count 14 of the amended indictment.

Following the denial of defendant's motions to suppress, among other things, the physical evidence seized in August 2010, the matter proceeded to trial, during the course of which defendant testified upon his own behalf. At the conclusion of the trial, the jury found defendant guilty of criminal possession of a forged instrument in the first degree (counts 1 through 10) and willful possession of cigarettes in packages bearing false, altered or counterfeited stamps (count 11) and acquitted defendant of the remaining charges. Defendant's subsequent motion to set aside the verdict was denied, and defendant thereafter was sentenced to an aggregate prison term of 3½ to 10½ years followed by a period of postrelease supervision. Defendant now appeals.

Defendant initially contends that County Court erred in denying his various suppression motions, including his motion to suppress the physical evidence seized at the variety store and from his vehicle on August 27, 2010 and a subsequent identification made of him with respect to the October 16, 2011 transaction. As to the August 2010 search of the variety store, although both defendant and the People have briefed this issue utilizing the standard probable cause analysis, the investigators testified, and County Court found, that the search of the premises constituted a regulatory search under Tax Law § 474 (4). In this regard, the statute authorizes the Commissioner of Taxation and Finance "to examine the books, papers, invoices and

other records of any person in possession, control or occupancy of any premises where cigarettes or tobacco products are placed, stored, sold or offered for sale, . . . as well as the stock of cigarettes or tobacco products in any such premises or vehicle" (Tax Law § 474 [4]; see generally People v Quackenbush, 88 NY2d 534, 541-542 [1996]). Where, as here, the stock to be inspected and examined is located at a retail outlet where cigarettes are sold, the investigators may "insist[], in a nonforcible manner, on entry into a locked storeroom, provided they reasonably believe[] it contain[s] cigarettes" (People v Rizzo, 40 NY2d 425, 429 [1976] [citation omitted]; see People v Sciacca, 45 NY2d 122, 128 [1978]). The authority to conduct an administrative search of this nature "must be carefully limited in time, place and scope" (People v Rizzo, 40 NY2d at 428) and does not extend to areas where the investigators have no reason to believe that "controlled activity [is] taking place" (People v Sciacca, 45 NY2d at 128). Hence, our inquiry distills to whether the investigators here exceeded the scope of the authority conferred upon them by Tax Law § 474 (4).

Anthony Vona, a criminal investigator for the Department of Taxation and Finance, testified that the Department received a complaint from an industry source that the variety store "had untaxed cigarettes in the back of the store" and that someone there was "stamping their own cigarettes with counterfeit stamps." Upon arriving at the location with fellow investigator Holly Stah, Vona spoke with defendant, who identified himself as the owner of the store and indicated that no one else was on the premises. As Stah spoke with defendant about obtaining invoices for the products located behind the counter, Vona walked to the rear of the store, where he observed a partition and a door leading to a back room. Through a gap in the door frame, Vona saw a quantity of brand-name cigarettes on the floor. When Vona informed defendant that he would need access to the back room, defendant's demeanor immediately changed; according to Vona, defendant became very nervous, began making phone calls — in Spanish — where cigarettes were discussed, changed his status from store owner to store manager, claimed that the back room was locked and instructed the investigators that they would need to return later when the owner arrived with a key.

Vona and defendant then walked to the rear of the store, where Vona stated to defendant, "[L]ook, I can see cigarettes clear[ly] in this back room; you're going to need to open this door." As this conversation was taking place, Vona heard movement in the room; defendant then opened the door — without a key — and Vona discovered another individual, identified by defendant as his "helper," in the back room.[1] The cigarettes that Vona had observed only moments earlier were now covered by a blanket or clothing;[2] when this covering was removed, Vona found a "master case" of cigarettes, which defendant — as a retailer — was not authorized to have, as well as another half case of cigarettes, for a total of 90 cartons of cigarettes. Vona removed one of the cartons and confirmed that it did not bear the required tax stamp. At this point, defendant's anxiety increased and he began pacing, prompting Vona to contact his supervisor to report the results of the inspection and to relay his concerns regarding defendant's behavior. Citing defendant's erratic behavior and resulting safety concerns, Vona briefly placed defendant in handcuffs until backup could arrive. As the search continued to unfold, investigators discovered, among other things, additional cases of untaxed cigarettes, as well as an iron that was believed to have been used to affix counterfeit tax stamps, in the back room. The counterfeit tax stamps themselves were discovered in a half bathroom immediately adjacent to the back room where the untaxed cigarettes were found and other

---

[1] Vona subsequently testified at trial that he could not recall whether it was defendant or his helper, identified as Donatilo Tolantino, who opened the door. Additional trial testimony also established that defendant made a series of phone calls to Tolantino after the investigators arrived at the store.

[2] Vona expanded on this discussion at trial, describing how — when he gained access to the room — the cigarettes that he had seen through the crack in the door "all of a sudden . . . were gone." When Vona asked what had happened to the cigarettes, neither defendant nor Tolantino responded, after which Vona lifted up a blanket lying on the floor and discovered the missing product.

merchandise packaged for sale was being stored.[3]

Inasmuch as defendant was "operating a retail outlet where cigarettes were sold openly and notoriously[, the investigators were authorized] . . . to enter the premises and inspect the cigarettes for possible fraudulent stamping" (Mubarez v State of New York, 115 Misc 2d 57, 59-60 [Ct Cl, 1982]; see People v Rizzo, 40 NY2d at 428-429).  While lawfully on those premises, Vona observed a quantity of cigarettes — in plain view — through a crack in the door leading to a back room, which was a "logical place to keep such additional stock" (Mubarez v State of New York, 115 Misc 2d at 60).  Vona's observations, coupled with defendant's nervous demeanor, misrepresentations and suspicious behavior, provided the investigators with a reasonable basis upon which to demand access to this storage area — where, among other things, a quantity of untaxed cigarettes were discovered. Although the counterfeit tax stamps themselves were located in a half bathroom off of this storage area, the half bathroom was immediately adjacent to the back room; additionally, Stah testified that the half bathroom was — based upon her observations — "probably not being used" for its intended purpose and, further, that the counterfeit tax stamps were recovered from the "same general area" as, among other things, the untaxed cigarettes.  Under these circumstances, we do not find that the investigators exceeded the permissible scope of their regulatory search (see People v Sciacca, 64 AD2d 677, 680 [1978]; see also Mubarez v State of New York, 115 Misc 2d at 59-60; compare People v Sciacca, 45 NY2d at 128-129; People v Rizzo, 40 NY2d at 429-430).  Accordingly, County Court properly denied defendant's motion to suppress the evidence seized from the variety store.

As for the subsequent search of defendant's van, one of the investigators testified at the suppression hearing that, although defendant initially refused a request to search his vehicle, he thereafter signed a written consent to search — a consent that the investigator read to defendant in its entirety in order to

---

[3]  Subsequent trial testimony also documented the discovery of empty master case boxes stored behind the toilet in this bathroom.

ensure that he understood the contents thereof, including that portion of the document advising defendant that he was not required to consent to a search of the vehicle. County Court credited the investigator's testimony on this point and, upon reviewing the transcript of the suppression hearing, we are satisfied that the People met their burden of establishing "that the consent was freely and voluntarily given based on the totality of the circumstances" (People v Williford, 124 AD3d 1076, 1078 [2015], lv denied 25 NY3d 1209 [2015]).[4]

Nor are we persuaded that the photographic array shown to the individual to whom defendant allegedly sold cigarettes on October 16, 2011 was unduly suggestive. Preliminarily, we note that defendant was acquitted of the charge relative to this incident, and the witness in question offered no testimony beyond the confines of this transaction. Hence, we are hard pressed to discern the impact of the allegedly flawed identification procedures upon defendant's convictions. That said, upon reviewing the testimony offered at the suppression hearing detailing the manner in which the array was prepared and presented to the witness in question, as well as the array itself, we are satisfied that the People met their initial burden of "establish[ing] the reasonableness of the police conduct and the lack of any undue suggestiveness in [the] pretrial identification procedure" employed (People v Smith, 122 AD3d 1162, 1163 [2014] [internal quotation marks and citations omitted]; see People v Lanier, 130 AD3d 1310, 1312-1313 [2015], lv denied ___ NY3d ___ [Oct. 29, 2015]; People v Matthews, 101 AD3d 1363, 1364 [2012], lvs denied 20 NY3d 1101, 1104 [2013]). We are equally satisfied that defendant thereafter failed to meet his ultimate burden of demonstrating that the procedure utilized was unduly suggestive (see People v Lanier, 130 AD3d at 1313; People v Matthews, 110 AD3d at 1364). Indeed, "[t]he physical characteristics of the people included in the [subject] array are sufficiently similar and the variations [are] not such as to

___

[4] The written consent to search form contained in the record on appeal — dated September 1, 2010 — does not appear to be the form that defendant executed in Stah's presence on August 27, 2010.

create a substantial likelihood that . . . defendant would be
singled out for identification" (People v Matthews, 101 AD3d at
1364 [internal quotation marks and citation omitted]).
Accordingly, defendant's motion to suppress the identification
was properly denied.

As for County Court's Sandoval and Molineux rulings,
defendant — as so limited by his brief — ascribes error to the
admission of evidence regarding (1) his 2008 arrest for, among
other things, possession of untaxed tobacco, (2) an allegedly
fake sublease for the variety store entered into between
defendant's purported girlfriend and a third party, and (3) his
October 2011 sale of untaxed cigarettes to one of the witnesses
who testified at trial.  With respect to defendant's 2008 arrest
in Schenectady County, County Court ruled that the People could
inquire as to whether defendant possessed untaxed tobacco for
sale on the date in question, but that the People could not imply
that defendant actually had been arrested, and no mention could
be made of the subsequent disposition of those charges.
Defendant raised no objection in this regard at the suppression
hearing, stating that there were reasons why the defense would
wish to explore this issue at trial, nor did he raise any
objection when this testimony was elicited at trial.
Accordingly, we deem this issue to be unpreserved for our review
(see People v Tinning, 142 AD2d 402, 406 [1988], lv denied 73
NY2d 1022 [1989]).[5]

With respect to the testimony that defendant sold untaxed
cigarettes to another convenience store owner on October 16,
2011, three points are worth noting.  First, defendant did not
raise a Molineux objection to such testimony at trial, nor did he
request any sort of limiting instruction.  Additionally, even

---

[5]  We note in passing that shortly after reference to this
incident was made at trial, County Court gave an appropriate
limiting instruction to the jury, stating that the jury could
consider such proof only as to the issue of identification and
that any testimony on this point could not be used to establish
that defendant had a propensity to commit the crimes charged in
the consolidated indictment.

accepting defendant's premise that such testimony constituted proof of an uncharged crime, which we do not, we are satisfied that this testimony would fall within any number of the recognized Molineux exceptions — including absence of mistake (see People v Molineux, 168 NY 264, 293 [1901]). Finally, inasmuch as defendant was acquitted of the charge to which this testimony most directly related (count 14 of the consolidated indictment charging criminal possession of a forged instrument in the first degree), we fail to discern any resulting prejudice. We reach a similar conclusion regarding the challenged sublease; even assuming that a document entered into between defendant's alleged girlfriend and a third party constitutes an uncharged crime or prior bad act attributable to defendant, we agree with County Court that such proof goes to defendant's intent to commit the charged crimes. Accordingly, we reject defendant's assertion that he was denied a fair trial due to the admission of the foregoing proof.

Finally, we find no merit to defendant's claim that the verdict is not supported by legally sufficient evidence and/or is against the weight of the evidence. New York imposes a tax on the possession of cigarettes intended for sale, the payment of which is evidenced "by means of an affixed cigarette tax stamp" (Tax Law § 471 [1]). Only licensed individuals, referred to in the Tax Law as "agents" (Tax Law § 470 [11]), are permitted to "purchase [cigarette tax] stamps and affix [them] . . . to packages of cigarettes to be sold within the state" (Tax Law § 471 [2]). Insofar as is relevant here, it is a felony for a person to "knowingly and willfully possess any cigarettes in packages bearing . . . false, altered or counterfeited stamp[s]" (Tax Law § 1814 [g]). Relatedly, "[a] person is guilty of criminal possession of a forged instrument in the first degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he [or she] utters or possesses any forged instrument of a kind specified in [Penal Law §] 170.15" (Penal Law § 170.30; see People v Batson, 103 AD3d 910, 910 [2013], lv denied 21 NY3d 1013 [2013]), which includes "stamps . . . or other valuable instruments issued by a government" (Penal Law § 170.15 [1]; see People v Batson, 103 AD3d at 910). As the People here proceeded upon a theory of constructive possession, they bore "the burden of establishing

that defendant exercised dominion and control over the contraband or the area where the contraband was found" (People v McGough, 122 AD3d 1164, 1166 [2014] [internal quotation marks and citations omitted], lv denied 24 NY3d 1220 [2015]; see Penal Law § 10.00 [8]).  "Such possession may be established through either direct or circumstantial evidence, and may be found even though others have access to the contraband or the area where it is located" (People v Rodwell, 122 AD3d 1065, 1067 [2014] [internal quotation marks and citation omitted], lv denied 25 NY3d 1170 [2015]; see People v Perry, 116 AD3d 1253, 1254 [2014]).

At the start of the trial, the parties stipulated, among other things, that the van parked at the rear of the variety store on August 27, 2010 was registered to defendant, that untaxed and unstamped (or unlawfully stamped) packages of cigarettes were seized from the premises on that date and that the sheets of tax stamps seized therein were counterfeit.  Hence, the dispositive issues before us center upon defendant's intent to deceive another, which may be inferred from the surrounding circumstances (see People v Bickley, 99 AD3d 1113, 1113-1114 [2012], lv denied 20 NY3d 1009 [2013]), and the proof adduced relative to his exercise of dominion and control over the areas where the contraband was found.  In this regard, without recounting the extensive and detailed testimony regarding defendant's conduct on the day in question, the observations made by the investigators on the scene and the product seized therefrom, we are satisfied that the verdict is supported by legally sufficient evidence and, further, is in accord with the weight of the credible evidence – specifically with respect to the intent and possession elements of the charged crimes.  To be sure, defendant attempted to downplay his role in the operation of the variety store, denied having access to or storing anything in the back room from which much of the product in question was seized and claimed that he phoned Tolantino on the day in question solely in an effort to locate the records requested by Stah.  In the final analysis, however, the conflicting proof offered at trial "created credibility issues that the jury was entitled to, and obviously did, resolve against [defendant]" (People v Muniz, 93 AD3d 871, 874 [2012], lv denied 19 NY3d 965 [2012]).  Defendant's remaining contentions, including his assertion that he improperly was denied the right to call certain

witnesses and that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.

Garry, J.P., Rose and Clark, JJ., concur.


ORDERED that the judgment is affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court