Garry, J.
Appeal from a judgment of the Supreme Court (Mc-Donough, J.) in Albany County, rendered April 18, 2014, upon a verdict convicting defendant of the crimes of robbery in the first degree and strangulation in the second degree.
The 19-year-old victim was walking alone in the City of Albany at about 2:00 a.m. when a man suddenly attacked her from behind, strangled her into unconsciousness and robbed her of her iPhone. Using GPS technology, police found the phone the next day, in defendant’s possession. Following a jury trial, defendant was convicted of robbery in the first degree and strangulation in the second degree. Supreme Court sentenced him as a predicate felony offender to a prison term of 18 years with five years of postrelease supervision for the robbery conviction and a concurrent prison term of seven years with five years of postrelease supervision for the strangulation conviction. Defendant appeals.
Initially, we reject defendant’s contention that Supreme Court erred in denying his motion to suppress his pretrial identifications by the victim and by another witness, each of whom selected defendant’s photograph in separate photo arrays. An identification must be suppressed as unduly suggestive when it results from a procedure that “depicts a unique characteristic which draws the viewer’s attention so as to indicate that the police have selected a particular individual” (People v Parker, 257 AD2d 693, 694 [1999], lv denied 93 NY2d 1024 [1999]; accord People v Smith, 122 AD3d 1162, 1163 [2014]). Here, the testimony describing the procedures by which police developed the arrays and carried out the identifications satisfied the People’s “initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in [the] pretrial identification procedure” (People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]). The burden thus shifted to defendant to prove that the procedures used were unduly suggestive (see id.; *1258 People v Reynoso-Fabian, 134 AD3d 1141, 1145 [2015]; People v Smith, 122 AD3d at 1163). Defendant did not, however, establish the existence of any feature of the photo arrays that would have improperly drawn a viewer’s attention to defendant’s photograph. Our review reveals that the men depicted in both photo arrays appear to be of about the same age, are similarly dressed and have similar skin coloring, haircuts and facial hair. The backgrounds are uniformly nondescript, and defend- ■ ant’s picture does not stand out in any way.
Further, no undue suggestiveness was shown in the double blind procedure used to administer the identifications, by which the officers who conducted the identifications were not familiar with defendant or the investigation. Defendant asserts that the photographs should have been selected to correspond with the attacker’s height as described by the victim, but the heights of the depicted persons cannot be discerned from the photographs, which show only their heads and shoulders. Thus, defendant did not establish that the photo arrays “create [d] a substantial likelihood that [he] would be singled out for identification,” and his suppression motion was properly denied (People v Chipp, 75 NY2d at 336; accord People v Lanier, 130 AD3d 1310, 1312 [2015], lv denied 26 NY3d 1009 [2015]).
Next, we find no merit in defendant’s contention that the victim’s iPhone should not have been admitted into evidence because the chain of custody was broken when the phone was temporarily returned to the victim between defendant’s arrest and the trial. When real evidence is alleged to be the object associated with a crime, the People must establish its authenticity by showing “first, that the evidence is identical to that involved in the crime; and, second, that it has not been tampered with” (People v Julian, 41 NY2d 340, 342-343 [1977]). A strict chain of custody may be used to establish these requirements for fungible items such as currency or drugs (see e.g. People v Carter, 131 AD3d 717, 722-723 [2015], lv denied 26 NY3d 1007 [2015]). When, however, “an object possesses unique characteristics or markings and is not subject to material alteration which is not readily apparent, a simple identification is sufficient to warrant admission,” even in the absence of a complete chain of custody (People v Julian, 41 NY2d at 343 [internal quotation marks and citation omitted]; accord People v Shoga, 89 AD3d 1225, 1226 [2011], lv denied 18 NY3d 886 [2012]; see People v Basciano, 109 AD2d 945, 946 [1985]).
Here, the victim identified the iPhone in her testimony, stating that the phone appeared to be in the same or substantially the same condition, and confirming that it contained her infor *1259 mation, contacts and music. Additionally, a police officer testified that he took photographs of the phone and its identifying numbers after it was taken from defendant and before it was returned to the victim, and that the photographs depicted the same phone that the victim identified in court. This was clearly sufficient to support the admission of the phone without proof of the chain of custody (see People v Bautista, 147 AD3d 1214, 1217 [2017]; People v Roblee, 83 AD3d 1126, 1127 [2011], lv denied 17 NY3d 809 [2011]; People v Weiler, 194 AD2d 894, 895 [1993], Iv denied 82 NY2d 728 [1993]). Any uncertainty that may have resulted from the period of time that the phone was out of the People’s custody was pertinent to the weight to be accorded to the evidence rather than its admissibility (see People v Gamble, 135 AD3d 1078, 1080 [2016], lv denied 27 NY3d 997 [2016]; People v Howard, 305 AD2d 869, 870 [2003], lv denied 100 NY2d 583 [2003]).
Defendant next contends that the verdict was against the weight of the evidence because the People failed to prove his identity as the victim’s attacker.[1] The victim testified that, several hours before the attack, she walked from her home in the City of Albany to a location on Pearl Street to attend a party. At approximately 1:40 a.m., she left the party alone and began to walk home. She acknowledged that she had ingested some drugs and alcohol during the evening and “was feeling woozy” when she left the party. She walked for about half an hour, using headphones to listen to music on her iPhone. As she was walking in the vicinity of Washington Park, she saw a man’s shadow on her right. Startled, the victim took out one of the headphones and looked at the man for about five seconds. He then “came around the back of [her]” without touching her, walked in front of her and bent down about half a block ahead of her to tie his shoe. The victim walked past him and, about 15 to 30 seconds later, the man “came up from behind [her] and put his arm around [her] neck and choked her out.” The victim was dragged to the ground and lost consciousness; when she awoke, she saw the man who had attacked her running into the park about 120 feet away. Her phone and headphones were no longer in her possession. The next morning, she contacted police, who located the phone in defendant’s posses *1260 sion; defendant was using the phone and claimed to have found it.[2]
At trial, the victim identified defendant as the man who attacked her, but acknowledged that she did not manage to get a good look at her attacker and that, due to her intoxicated condition, her memory of the night of the incident was “[n]ot very good.” Further, the police officers who interviewed the victim testified that the description she provided on the morning after the attack did not correspond with defendant’s physical characteristics; she described a “skinny” man who was approximately 5 feet 6 or 7 inches tall, while defendant was 6 feet 1 inch tall with a muscular build.
Significantly, however, the victim was not the sole witness to identify defendant at trial. The People also presented the testimony of a witness who testified that he was in the area of Washington Park on the night of the incident and saw the victim twice — first, late in the evening as she walked toward downtown Albany, and then again in the early hours of the following morning as she walked in the opposite direction, heading up Washington Avenue. He noticed and remembered the victim because of her attractive appearance; he described the clothing that she was wearing in detail, and identified the garments at trial. When he saw the victim the second time, early in the morning, she was alone and wearing headphones. The witness was near the park, walking a short distance in front of the victim, when a man whom he subsequently identified as defendant “jump[ed] out on [him].” The witness stated that he and defendant were about three inches apart and looked each other in the eyes for a few seconds; defendant then “dart[ed]” past him into the park. A few moments later, the witness sat down on a nearby bench. The victim walked past him and the witness then saw defendant again, behind the victim and “close enough where he just walked right past me and I can see everything.” As the victim continued walking, the witness saw defendant “running in and out, like walking fast in and out of the bushes.” The witness testified that he saw defendant approach the victim without coming close enough to touch her several times. He realized “there was something going on,” but could not call police because his phone was not working; he got up and tried to catch up with the victim and defendant, but was unable to do so. The next morning, he saw the victim being escorted into the police station by an officer. *1261 He then contacted the police and described what he had seen. At trial, this witness unequivocally identified defendant as the man he had seen following the victim, and testified that he had received no benefit for his testimony.
Defendant argues that the witness did not see the actual attack upon the victim, and that there were inconsistencies and discrepancies in his account. Nevertheless, these conflicts in his testimony presented factual issues for the jury to resolve. Further, although defendant offered alibi evidence that he was in a karaoke bar several blocks from the incident an hour or two before it took place, this testimony did not preclude his presence at the scene of the attack at the time when the victim said it occurred. Thus, viewing the evidence in a neutral light and deferring to the jury’s credibility assessments, we find that the weight of the evidence supports the verdict (see People v Gamble, 135 AD3d at 1079-1080; People v Ramos, 129 AD3d 1205, 1206-1207 [2015], lv denied 26 NY3d 971 [2015]; People v Robles, 115 AD3d 30, 32-33 [2014], lv denied 22 NY3d 1202 [2014]).
Finally, we reject defendant’s contention that his sentence— which was less than the maximum he could have received— was harsh and excessive. The fact that the sentence was longer than one offered before trial in a plea bargain that defendant rejected, without more, does not establish that the sentence was vindictive (see People v Pena, 50 NY2d 400, 411-412 [1980], cert denied 449 US 1087 [1981]; People v Nichol, 121 AD3d 1174, 1178 [2014], lv denied 25 NY3d 1205 [2015]). In view of the violent nature of the offense and defendant’s criminal history, which included a prior conviction for robbery in the first degree, we find no extraordinary circumstances or abuse of discretion warranting a modification of the sentence (see People v Parker, 127 AD3d 1425, 1429 [2015]; People v McCann, 126 AD3d 1031, 1035-1036 [2015], lv denied 25 NY3d 1167 [2015]).
Peters, P.J., McCarthy, Rose and Aarons, JJ., concur.
Ordered that the judgment is affirmed.

. To the extent that defendant’s argument may be construed as a challenge to the legal sufficiency of the evidence, the claim is unpreserved (see People v Finch, 23 NY3d 408, 423-424 [2014]). However, our weight of the evidence review necessarily requires us to determine whether all of the elements of the charged crimes were proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Collier, 146 AD3d 1146, 1147-1148 [2017]).

. In the course of the trial, the jury heard a recording of defendant’s explanation to police as to how he had found the phone. A playback of this recording was requested thereafter in the course of the jury’s deliberations.