■ The People of the State of New York, Respondent, v Wayne Cole, Appellant. [52 NYS3d 744]—

Egan Jr., J. Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered April 30, 2014, upon a verdict convicting defendant of the crimes of attempted robbery in the second degree and assault in the second degree.

On the afternoon of March 30, 2013, a 92-year-old woman (hereinafter the victim) left her home and walked to a CVS

pharmacy located on Central Avenue in the City of Albany. While the victim was shopping, defendant entered the store briefly, wearing a dark-colored jacket with white stripes, a red knit beanie and dark glasses, and then exited. A short time later, defendant again entered the store and approached the pharmacy counter, where the victim sat waiting in a chair. Following a brief conversation with a pharmacy technician, defendant again left the store. After retrieving a black garbage bag from across the street, defendant removed his jacket, carefully folded and placed it inside of the bag and waited on the sidewalk outside of the CVS. When the victim emerged, defendant crossed the street and pursued the victim on a parallel track, during the course of which he was captured on a surveillance camera as he paused to cinch his dark hooded sweatshirt tightly around his face—obscuring the red knit beanie—and don a pair of gloves. The victim then crossed Central Avenue and, as she neared the intersection of Robin Street and Washington Avenue, defendant accosted her, knocked her to the ground, grabbed her by both arms and attempted to take her purse. In the course thereof, the victim's hearing aid was "knocked out," and she sustained a significant fracture to the middle finger of her left hand, as well as severe swelling and bruising to, among other areas, her right arm.

As a result of this incident, defendant was indicted and charged with attempted robbery in the second degree and assault in the second degree. A jury trial ensued, at the conclusion of which defendant was convicted as charged and thereafter was sentenced to concurrent prison terms of seven years followed by three years of postrelease supervision. Defendant's subsequent motion to set aside the verdict was denied, prompting this appeal.

We affirm. Preliminarily, we reject defendant's assertion that the photo array prepared in this matter was unduly suggestive.[1] "Photo arrays are considered unduly suggestive and improper if they are arranged in a manner which creates a substantial likelihood that the defendant would be singled out for identification. While the physical characteristics of all the people included in an array must be similar, so that the viewer's attention is not particularly drawn to [the] defendant, there is no requirement that [the] defendant be surrounded by

---

1. It is unclear whether defendant is challenging a particular witness's in-court identification of him or, rather, is contending that County Court erred in denying his motion to suppress the pretrial identification following the *Wade* hearing. Either way, we discern no error on the part of County Court.

people nearly identical in appearance" (*People v Lind*, 20 AD3d 765, 766-767 [2005] [internal quotation marks, brackets and citations omitted], *lv denied* 5 NY3d 830 [2005]; *see People v Pleasant*, 149 AD3d 1257, 1257 [2017]; *People v Smith*, 122 AD3d 1162, 1163 [2014]). Although the People bear the burden of "establish[ing] the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure, it is the defendant who bears the ultimate burden of proving that the procedure was unduly suggestive" (*People v Smith*, 122 AD3d at 1163 [internal quotation marks and citations omitted]; *see People v Al Haideri*, 141 AD3d 742, 743 [2016], *lv denied* 28 NY3d 1025 [2016]).

As we are satisfied that the People met their initial burden in this regard, we turn to defendant's claimed infirmity in the array—namely, that of the six black men depicted therein, he was the only one with a freckled or pockmarked complexion, which was the salient facial characteristic observed by the identifying witness; accordingly, defendant's argument continues, the identifying witness's attention necessarily was drawn to his picture. Upon reviewing the subject array, we disagree.

The array was comprised of six photographs, taken under similar lighting conditions and displaying virtually identical backgrounds, of six black men with little or no visible hair—all of whom were around the same age and each of whom was wearing a yellow jumpsuit. At least three of the six individuals depicted in the array had similarly uneven skin tone, and the purported freckles or pockmarks cited by defendant were not sufficiently visible so "that defendant's photo jumped out at the viewer based on the way the array was organized," thereby signaling that he was the likely culprit (*People v Lind*, 20 AD3d at 767). Accordingly, we discern no basis upon which to disturb County Court's denial of defendant's suppression motion (*see People v Pleasant*, 149 AD3d 1257, 1258 [2017]; *People v Ruiz*, 148 AD3d 1212, 1214-1215 [2017]; *People v Matthews*, 101 AD3d 1363, 1364-1365 [2012], *lv denied* 20 NY3d 1101 [2013]) and, similarly, have no quarrel with the subject witness's in-court identification of defendant at trial.

Defendant's challenge to the admissibility of the victim's out-of-court statements to, among others, responding emergency services personnel, is equally unavailing. The crux of defendant's argument on this point is that, inasmuch as the People succeeded in having the victim—who suffered from dementia—declared to be incompetent to testify at trial (*see* CPL 60.20 [1]), the People should not have been able to utilize the victim's out-of-court statements, which implicated defendant in the

charged crimes, simply because the victim was alert and oriented at the time such statements were made. Again, we disagree.

"An out-of-court statement is properly admissible under the excited utterance exception [to the hearsay rule] when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication. Underlying this exception is the assumption that a person under the influence of the excitement precipitated by an external startling event will lack the reflective capacity essential for fabrication and, accordingly, any utterance he [or she] makes will be spontaneous and trustworthy" (*People v Johnson*, 1 NY3d 302, 306 [2003] [internal quotation marks and citation omitted]; *see People v Hibbert*, 134 AD3d 957, 957 [2015], *lv denied* 28 NY3d 930 [2016]). Where, as here, the declarant is deemed incompetent to testify at trial, the question becomes whether he or she was competent at the time that the out-of-court statements were made (*see People v Sullivan*, 117 AD2d 476, 478-479 [1986], *lv denied* 68 NY2d 918 [1986]).

At trial, a firefighter—employed by the City of Albany and trained as an emergency medical technician—testified that his fire station received a report of a traumatic injury on the afternoon of March 30, 2013. Approximately one minute later, the firefighter and others arrived at the intersection of Washington Avenue and Robin Street in the City of Albany, where he observed the victim—"[v]ery upset and in distress." Although the victim was sitting in the back of a vehicle when the firefighter first encountered her, he testified that she "looked like she had been on the ground" as she was dirty and had "road gravel on her legs." As the firefighter approached the victim to inquire as to what had happened, the victim spontaneously stated, "He took my purse" or "[H]e tried to take my purse." In response to the firefighter's inquiry as to the extent of her injuries, the victim indicated that she had been "thrown to the ground" and described pain to her left hand and knee, and the firefighter observed injuries that were consistent with the victim's description of the assault.

In addition to the foregoing, two other individuals (a father and his daughter), who came upon the scene while the assault was still in progress, also testified as to statements made by the victim immediately following the incident. The daughter testified that, as she and her father approached the subject intersection in their vehicle, she heard a woman screaming for help and immediately pulled over, whereupon she saw the

victim "being dragged backwards into the bus stop" at that location. When the father exited the vehicle, approached and inquired as to what was happening, the individual who was dragging the victim—later identified as defendant—indicated that he was just trying to help her up from the ground; in response, the victim "said no very emotionally and with conviction" and was "very adamant that that was not the case," prompting the daughter to call 911. Although the daughter could not recall the victim's exact words at this point, she testified that the victim said something along the lines of "he tried to take my purse." The father offered similar testimony, testifying that, in response to her assailant's claim that he was just trying to help her up, the victim exclaimed, "[M]y bag, my bag." Defendant challenged the admissibility of such statements at trial, arguing that the victim was not competent at the time that the statements were made.[2]

While the victim indeed appeared "frazzled," the firefighter, who had responded to "thousands of calls a year" over the course of a 10-year period, testified that such behavior was "typical" of someone who had suffered "[a] traumatic experience." As for the victim's demeanor and mental status, the firefighter testified that the victim was "[a]lert and oriented. She knew exactly where she was. She knew exactly what happened to her." The firefighter further testified that the victim responded to all of his questions appropriately, such as indicating where she lived and where she had been immediately prior to the assault, and rejected any assertion that the victim was confused. Such testimony, in our view, was more than sufficient to establish that the victim made the statements at issue while under the stress caused by the attempted robbery and assault and, further, was competent at the time that she made them. Accordingly, County Court properly admitted such statements under the excited utterance exception to the hearsay rule (see *People v Reyes*, 144 AD3d 1683, 1685 [2016]; *People v Knapp*, 139 AD2d 931, 931 [1988], *lv denied* 72 NY2d 862 [1988]). Moreover, the victim's statements also were properly admissible under CPL 60.20 (2), as there was other corroborative evidence (see *infra*) tending to establish both the commission of the underlying crimes and defendant's connection thereto (see *People v Petrie*, 3 AD3d 665, 667 [2004]; *see also People v Jones*, 110 AD3d 1484, 1485 [2013], *lv denied* 22 NY3d 1157 [2014]).

---

**2.** We note in passing that, in his brief, defendant does not challenge the victim's out-of-court statements made to the police detective who interviewed the victim at the hospital "right after the incident," at which time the victim indicated "that a black male older than [the detective] had tried to take her purse, but that she didn't let it go."

As for defendant's challenge to the legal sufficiency and/or weight of the evidence, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he or [she] . . . [c]auses physical injury to any person who is not a participant in the crime" (Penal Law § 160.10 [2] [a]). An attempt to commit a crime is accomplished "when, with intent to commit a crime, [a person] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). Finally, insofar as is relevant here, "[a] person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to a person who is [65] years of age or older, he or she causes such injury to such person, and the actor is more than [10] years younger than such person" (Penal Law § 120.05 [12]). "A defendant's intent to commit a particular offense may be inferred from his or her conduct and from the surrounding circumstances" (*People v Ward*, 141 AD3d 853, 854 [2016] [internal quotation marks, brackets and citations omitted]).

As noted previously, the firefighter, the father and the daughter each testified as to the statements made by the victim at the scene, and the daughter recounted her observations of the victim screaming for help as she was being dragged along the sidewalk by her assailant. In addition to the foregoing, the victim's treating physician testified as to the injuries that the victim sustained as a result of the assault, which included a badly fractured middle finger on her left hand, and additional proof was tendered to establish the respective ages of the victim and defendant at the time thereof. With respect to the issue of identification, the daughter indeed was unable to identify defendant as the perpetrator, but both she and her father provided detailed descriptions of the victim's assailant and the specific and distinctive clothing that he was wearing—descriptions that were entirely consistent with both defendant's physical characteristics and the clothing that subsequently was seized from defendant's residence and a neighbor's apartment (and admitted into evidence at trial)—and the father thereafter identified defendant, both prior to and at trial, as the victim's assailant.

In addition to the father's testimony on this point, the People introduced surveillance footage from various vantage points, which depicted defendant walking behind the victim on the way to CVS, twice entering the store while the victim was inside (on one occasion standing a short distance away from and looking directly at her), waiting outside on the sidewalk

for the victim to emerge (during the course of which he removed his white-striped jacket), following the victim from across the street after she exited the store (pausing to pull the hood of his sweatshirt over his red knit beanie, cinching the hood down and putting on a pair of gloves) and, a short time later, crossing Robin Street behind the victim—all before returning to his residence (once again wearing the striped jacket and, this time, with his red knit beanie plainly visible). Although defendant denied being the person depicted on the street surveillance videos, he admitted to law enforcement officials that he was the individual seen on the CVS videos. Further, after the police released photographs taken from the CVS videos to the media, three individuals came forward and identified defendant as the person depicted therein. Finally, with respect to the issue of intent, defendant's calculated actions in stalking the victim and attempting to conceal his identity speak for themselves. Accordingly, upon reviewing the record as a whole, we find that the verdict is supported by legally sufficient evidence and is in accord with the weight of the evidence.

Defendant's remaining contentions do not warrant extended discussion. Defendant's claim of prosecutorial misconduct, which finds its roots in certain allegedly improper comments made by the prosecutor during the People's summation, is—in the admitted absence of timely objections—unpreserved for our review (*see People v Rivera*, 124 AD3d 1070, 1074-1075 [2015], *lv denied* 26 NY3d 971 [2015]; *People v Green*, 119 AD3d 23, 30 [2014], *lv denied* 23 NY3d 1062 [2014]). Further, "corrective action in the interest of justice is unwarranted . . . [where, as here,] the challenged statements generally constituted fair comment on the evidence[,] . . . were made in response to defense counsel's summation . . . and . . . were not so pervasive or flagrant as to require reversal" (*People v Fomby*, 101 AD3d 1355, 1357 [2012] [internal quotation marks and citation omitted]).

Finally, we reject defendant's claim that the sentence imposed was harsh and excessive. "It is well settled that a sentence that falls within the permissible statutory range[ ] will not be disturbed unless it can be shown that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification in the interest of justice" (*People v Simmons*, 122 AD3d 1169, 1169 [2014] [internal quotation marks, brackets and citations omitted], *lv denied* 25 NY3d 1171 [2015]). Here, defendant preyed upon and attacked an elderly woman suffering from dementia—conduct for which, according to the presentence investigation

report, he refused to accept responsibility and, hence, expressed no hint of remorse. In light of the current offenses and defendant's prior criminal history, we do not find the sentence imposed to be harsh or excessive; we discern no extraordinary circumstances or an abuse of discretion that would warrant a reduction of the sentence in the interest of justice. Accordingly, the judgment of conviction is in all respects affirmed.

McCarthy, J.P., Garry, Rose and Mulvey, JJ., concur. Ordered that the judgment is affirmed.