People v Quintana (2018 NY Slip Op 01501)





People v Quintana


2018 NY Slip Op 01501


Decided on March 8, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 8, 2018

107273

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JASON QUINTANA, Also Known as JOHN, Appellant.

Calendar Date: January 8, 2018

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Rumsey, JJ.


Lucas G. Mihuta, Albany, for appellant.
Chad W. Brown, District Attorney, Johnstown (Amanda M. Nellis of counsel), for respondent.


Clark, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Fulton County (Hoye, J.), rendered December 15, 2014, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree (two counts).
In July 2013, members of the City of Gloversville Police Department conducted two controlled buys in which a confidential informant (hereinafter CI) purchased heroin from defendant. Defendant was thereafter charged in an indictment with two counts of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance
in the third degree. Prior to trial, defendant moved to suppress identification evidence on the basis that the identification procedure was unduly suggestive. A Wade hearing ensued, after which County Court found that the photo array used to identify defendant was not unduly suggestive and denied defendant's motion to suppress that photo array. Following a jury trial, defendant was convicted of all four counts. County Court thereafter sentenced defendant, as a second felony offender, to an aggregate prison term of eight years, to be followed by three years of postrelease supervision. Defendant now appeals.
As an initial matter, defendant argues that the indictment is defective as it does not contain the requisite signature of the grand jury foreperson as required by statute (see CPL [*2]200.50 [8]). Inasmuch as the absence of a jury foreperson's signature on an indictment is a "technical, nonjurisdictional defect" (People v Stauber, 307 AD2d 544, 545 [2003], lv denied 100 NY2d 599 [2003]; see People v Pigford, 148 AD3d 1299, 1302 [2017], lv denied 29 NY3d 1085 [2017]), defendant's failure to move to dismiss the indictment on this basis renders his claim unpreserved (see People v Pigford, 148 AD3d at 1302; People v Burch, 97 AD3d 987, 988 [2012], lv denied 19 NY3d 1101 [2012]; People v Striplin, 48 AD3d 878, 879 [2008], lv denied 10 NY3d 871 [2008]). Were this claim preserved, we would nonetheless find it to be without merit. An indictment signed by the District Attorney with an affixed backer signed by the grand jury foreperson satisfies the statutory requirements (see CPL 200.50 [8], [9]; People v Broomfield, 128 AD3d 1271, 1272 [2015], lv denied 26 NY3d 1086 [2015]; People v Burch, 97 AD3d at 988; People v Striplin, 48 AD3d at 879). Here, the record before us reflects that the indictment contains a backer with the grand jury foreperson's signature, along with "the name of the District Attorney typed on the same page" (People v Pigford, 148 AD3d at 1302).
Defendant contends that the verdict is not supported by legally sufficient evidence and was against the weight of the evidence. The standard for reviewing the legal sufficiency of the evidence in a criminal case is well-established (see People v Bueno, 18 NY3d 160, 169 [2011]; People v Bleakley, 69 NY2d 490, 495 [1987]; People v Byrd, 152 AD3d 984, 986 [2017]). As relevant here, "[a] person is guilty of criminal sale of a controlled substance in the third degree when he [or she] knowingly and unlawfully sells . . . a narcotic drug" (Penal Law § 220.39 [1]). Additionally, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell" (Penal Law § 220.16 [1]).
At trial, the testimony established that defendant sold heroin to a CI during two controlled buys that were monitored by the members of the City of Gloversville Police Department. Detective Sergeant Michael Jory explained that, for both controlled buys, he searched the CI to ensure that the CI had no money or illegal items, provided him with the money to be used for the controlled buys, and observed him depart the predetermined location and return to that location at the conclusion of each buy. Detective Michael Calbet testified that, for both controlled buys, he personally observed the CI walk to defendant's house, enter a pathway toward the back porch, which could be used to access defendant's apartment, and then exit the porch sometime later and walk back to Jory. Captain Anthony Clay testified that, with regard to the first controlled buy, he observed the CI walk to defendant's house and then walk back to Jory. In addition to identifying defendant in court as the person from whom he purchased heroin on both occasions, the CI testified that, as to each controlled buy, he was searched by Jory prior to the controlled buy, given buy money and dropped off at a predetermined location at which point he walked to defendant's house. With regard to the first controlled buy, the CI explained that he intended to purchase heroin from defendant's brother but, once he arrived at the house, he purchased heroin from defendant. The CI also described how, upon arriving at defendant's house and knocking on the door, defendant let him enter, whereupon the CI purchased five bags of heroin at a total cost of $160 and then left the residence to return and give the five bags of heroin to Jory. The People also elicited the testimony of two forensic scientists with the State Police Crime Lab, who analyzed the substances obtained from the controlled buys and positively identified each substance obtained as heroin. Moreover, each scientist, in their respective reports, identified the substance tested from the controlled buys as "heroin — narcotic drug."
In view of the foregoing evidence, we find that the evidence proffered at trial established, beyond a reasonable doubt, that defendant knowingly and unlawfully possessed heroin, a narcotic drug, with the intent to sell it and, indeed, knowingly and unlawfully sold heroin to the CI on two separate occasions (see Penal Law §§ 220.16 [1]; 220.39 [1]; People v [*3]Gibson, 121 AD3d 1416, 1417-1418 [2014], lv denied 24 NY3d 1119 [2015]; People v Stevens, 87 AD3d 754, 754-755 [2011], lvs denied 18 NY3d 861 [2011]). As to defendant's specific contention on appeal that the People failed to prove at trial that heroin is a narcotic, Penal Law § 220.00 defines a controlled substance as, among others, those listed under schedule I of Public Health Law § 3306 (see Penal Law § 220.00 [5]); a "[n]arcotic drug means any controlled substance listed in schedule . . . I (c)" (Penal Law § 220.00 [7] [internal quotation marks omitted]) and heroin is listed as a controlled substance in the Public Health Law (see Public Health Law § 3306 [I] [c]). Inasmuch as both forensic scientists testified that the substances from the controlled buys tested positive for heroin and that their reports further identified the substances tested as heroin and a narcotic drug, we find that, when viewing the evidence in the light most favorable to the People and drawing every inference in their favor (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Warrington, 146 AD3d 1233, 1235 [2017], lv denied 29 NY3d 1038 [2017]), the evidence produced at trial was also legally sufficient to establish heroin as a narcotic (see People v McGriff, 201 AD2d 672, 673 [1994], lv denied 83 NY3d 913 [1994]; People v Jackson, 155 AD2d 895, 895 [1989], lv denied 75 NY2d 920 [1990]; People v Tramell, 152 AD2d 989, 990 [1989]).
As to defendant's claim that the verdict was against the weight of the evidence, where, as here, an alternative verdict would not have been unreasonable, we must, "like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d at 495 [internal quotation marks and citation omitted]). In particular, defendant contends that the testimony of the CI was not corroborated. "An informant acting as an agent of the police without the intent to commit a crime is not an accomplice whose testimony requires corroboration" (People v Thaddies, 50 AD3d 1249, 1249-1250 [2008] [internal quotation marks and citations omitted], lv denied 10 NY3d 965 [2008]; accord People v Van Hoesen, 145 AD3d 1183, 1184 [2016]). As the CI acted as an agent of the police, the corroboration of his testimony was not required (see People v Van Hoesen, 145 AD3d at 1184; People v Thaddies, 50 AD3d at 1249-1250). In any event, the testimony of the police officers concerning their observations of the controlled buys and the heroin sold to the CI by defendant, which the CI tendered to the police, sufficiently corroborates the CI's testimony. Moreover, defendant elicited testimony from the CI regarding, among other things, his history of drug abuse and use of heroin, his criminal and arrest history and his inconsistent statements made between his grand jury and trial testimony, thereby providing the jury with ample information to determine the extent to which the CI should be found credible (see People v Magee, 135 AD3d 1176, 1179-1180 [2016]; People v Nicholas, 130 AD3d 1314, 1315-1316 [2015]; People v Gibson, 121 AD3d at 1418; People v Wingo, 103 AD3d 1036, 1036-1037 [2013], lv denied 21 NY3d 1021 [2013]; People v Wilson, 100 AD3d 1045, 1046 [2012], lv denied 22 NY3d 998 [2013]). According deference to the credibility determinations made by the jury, and after reviewing and weighing the evidence in the record in a neutral light, we are unpersuaded by defendant's contention that the jury's verdict was against the weight of the evidence (see People v Gibson, 121 AD3d at 1418; People v Nichol, 121 AD3d 1174, 1176-1178 [2014], lv denied 25 NY3d 1205 [2015]).
Nor are we persuaded by defendant's contention that the photo identification procedure used by the police was unduly suggestive and that the CI's pretrial identification of him should have been suppressed. "[U]nduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused" (People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]; see People v Lanier, 130 AD3d 1310, 1312 [2015], lv denied 26 NY3d 1009 [2015]; People v Smith, 122 AD3d 1162, 1163 [2014]). "[A] photo array is unduly suggestive if it depicts a unique characteristic which draws the viewer's attention so as to indicate that the police have selected a particular [*4]individual" (People v Smith, 122 AD3d at 1163 [internal quotation marks and citations omitted]; accord People v Yousef, 8 AD3d 820, 821 [2004], lv denied 3 NY3d 743 [2004]; see People v Pleasant, 149 AD3d 1257, 1257 [2017], lv denied 30 NY3d 1022 [2017]; People v Al Haideri, 141 AD3d 742, 743 [2016], lv denied 28 NY3d 1025 [2016]). "While the People have the initial burden of establishing the reasonableness of police conduct and the absence of any undue suggestion, it is the defendant who bears the ultimate burden of proving that the pretrial identification procedure was unduly suggestive" (People v Casanova, 152 AD3d 875, 877 [2017] [citations omitted], lvs denied 30 NY3d 948 [2017]; accord People v Chipp 75 NY2d at 335; see People v Cole, 150 AD3d 1476, 1478 [2017]).
Having reviewed the testimony from the Wade hearing, we find that the People satisfied their initial burden to establish that the police conduct was reasonable and that their procedure was not unduly suggestive (see People v Cole, 150 AD3d at 1478; People v Smith, 122 AD3d at 1163). We therefore turn to defendant's contention that the photo array was unduly suggestive because it purportedly included five African-American men with darker skin tone than defendant, who is Hispanic-Caucasian. The photo array in question was comprised of six photos — all of which were taken under similar lighting conditions and indistinguishable backgrounds — of men similar in age, stature and girth, and with little to no hair on their heads and nearly identical facial hair. Their skin tones varied, but at least one of the other photographs depicted an individual with nearly identical skin tone to defendant. All six men were wearing black shirts, occupied the same amount of space in the photos and were positioned at nearly the same angle and distance from the camera. Although defendant's neck tattoo was partially visible, none of defendant's physical attributes "'jumped out at the viewer based on the way the array was organized,' thereby signaling that he was the [individual in question]" (People v Cole, 150 AD3d at 1478, quoting People v Lind, 20 AD3d 765, 767 [2005], lv denied 5 NY3d 830 [2005]; see People v Chipp, 75 NY2d at 336; People v Smart, 142 AD3d 513, 514 [2016], affd 29 NY3d 1098 [2017]; People v Spence, 92 AD3d 905, 905 [2012]). Indeed, there is no requirement that the physical characteristics, including skin tone, of the six males depicted in the photo array be "nearly identical" to defendant (People v Chipp, 75 NY2d at 336; see People v Casanova, 152 AD3d at 878; People v Hicks, 110 AD3d 1488, 1489 [2013], lv denied 22 NY3d 1156 [2014]; People v Spence, 92 AD3d at 905). In our view, the physical characteristics of the six males depicted are sufficiently similar to alleviate any concerns that defendant would be singled out for identification (see People v Cole, 150 AD3d at 1478; People v Pleasant, 149 AD3d at 1258; compare People v Smith, 122 AD3d at 1163). Accordingly, we discern no basis upon which to disturb County Court's denial of defendant's pretrial suppression motion and find no error with the CI's in-court identification of defendant at trial.
We address the balance of defendant's contentions in short order. We find that defendant failed to adequately preserve his contention that County Court abused its discretion by permitting the People to inquire into defendant's prior criminal convictions if he testified. "[A] challenge based on a Sandoval error must be preserved for appellate review by a specific, timely objection" (People v Jackson, 29 NY3d 18, 22 [2017]; see People v Cantave, 21 NY3d 374, 379 [2013]). Although defendant moved for and was granted a Sandoval hearing, he did not lodge an objection to County Court's Sandoval ruling at that time. Moreover, following the People's case-in-chief, and upon the court's inquiry, although defendant declined to testify on his own behalf, generally citing the Sandoval ruling and the testimony put forth by the People's witnesses, he failed at that time to either register an objection or apprise the court of the specific grounds upon which he took issue with the pretrial Sandoval ruling, which would have afforded the court the opportunity to revisit and change its ruling (see People v Jackson, 29 NY3d at 22; People v Garcia-Toro, 155 AD3d 1086, 1089 [2017]; compare People v Cantave, 21 NY3d at 379; People v Gliwski, 156 AD3d 1393, 1394 [2017]). Similarly, defendant's challenges to the voir dire [*5]procedure employed, as well as to the oaths administered, by County Court are unpreserved as he failed to raise an appropriate and timely objection challenging the court's use of the juror-by-juror method and its administration of the oaths to the jurors (see CPL 470.05 [2]; People v Wells, 15 NY3d 927, 928 [2010], cert denied 565 US 828 [2011]; People v Chancey, 127 AD3d 1409, 1412 [2015], lv denied 25 NY3d 1199 [2015]; People v Hebert, 68 AD3d 1530, 1532-1533 [2009], lv denied 14 NY3d 841 [2010]; compare People v Powell, 153 AD3d 1034, 1036 [2017]). Nor did defendant sufficiently preserve any argument concerning the wording of the final jury charge by objecting to the charge that was given or by requesting different language (see CPL 470.05 [2]; People v Davis, 133 AD3d 911, 914 [2015]; People v Watkins, 121 AD3d 1425, 1427 [2014], lvs denied 24 NY3d 1123, 1124 [2015]; People v Hawkins, 110 AD3d 1242, 1244 [2013], lv denied 22 NY3d 1041 [2013]).
Finally, we do not find defendant's sentence to be harsh or excessive. At sentencing, defendant expressed remorse for, and insight regarding, the serious nature of his crimes and their effect on the community. Nevertheless, defendant, who was sentenced as a second felony offender, has a significant criminal history that spans his adult life, for which he has previously served two prison terms. Given these circumstances, the serious nature of defendant's crimes and his prior crimes involving drugs and multiple revocations of parole, we discern no abuse of discretion or any extraordinary circumstances that would warrant a reduction of the sentence in the interest of justice (see People v Johnson, 151 AD3d 1462, 1466 [2017], lv denied ___ NY3d ___ [Jan. 26, 2018]; People v Hawkins, 130 AD3d 1298, 1305 [2015], lv denied 26 NY3d 968 [2015]; People v Gibson, 121 AD3d at 1419). Defendant's remaining claims, including his assertion that his pretrial and trial counsels provided ineffective assistance, have been reviewed and determined to be lacking in merit.
Egan Jr., J.P., Lynch, Mulvey and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.