People v Oliveras (2022 NY Slip Op 01350)





People v Oliveras


2022 NY Slip Op 01350


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

111643
[*1]The People of the State of New York, Respondent,
v
Manani S. Oliveras, Appellant.

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

John R. Trice, Elmira, for appellant, and appellantpro se.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Broome County (Dooley, J.), rendered March 27, 2019, upon a verdict convicting defendant of the crimes of burglary in the second degree, burglary in the third degree and possession of burglar's tools (two counts).
Defendant was indicted on two counts of burglary in the second degree and two counts of possession of burglar's tools, stemming from two separate incidents, one occurring in the Town of Dickinson, Broome County and the other in the Village of Endicott, Broome County. Prior to the start of the jury trial, County Court granted the People's motion to reduce the charge pertaining to the Endicott property to burglary in the third degree. Following the trial, defendant was found guilty on all counts. Defendant was sentenced as a second violent felony offender to a prison term of 10 years with five years of postrelease supervision for his conviction of burglary in the second degree, to a consecutive prison term of 2½ to 5 years for his conviction of burglary in the third degree, and to lesser concurrent terms of incarceration for the other two convictions. Defendant appeals.
Defendant first contends that the jury's verdict is not supported by legally sufficient evidence and is against the weight of the evidence. As to the burglary in the second degree conviction, defendant asserts that the property at issue was not a dwelling, he did not go into the structure, he did not commit a crime and no property was taken. With respect to the burglary in the third degree conviction, defendant argues that the People failed to prove that he entered the building as there were no eyewitnesses, fingerprints or DNA linking him to the crime. Finally, as to the convictions of possession of burglar's tools, defendant asserts that he lacked the requisite intent.
"When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Walker, 191 AD3d 1154, 1155 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 961 [2021]; see People v Saylor, 173 AD3d 1489, 1490 [2019]). "[W]hen undertaking a weight of the evidence review, [this Court] must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Hernandez, 180 AD3d 1234, 1235 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 993[*2][2020]; see People v Drayton, 183 AD3d 1008, 1009 [2020], lv denied 35 NY3d 1065 [2020]).
As charged here, a conviction for burglary in the second degree requires proof that the defendant knowingly entered or remained in a dwelling with intent to commit a crime therein (see Penal Law § 140.25 [2]). "A person is guilty of burglary in the third degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). "A person is guilty of possession of burglar's tools when he [or she] possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises . . . under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character" (Penal Law § 140.35).
The executor of the estate that owned the Dickinson property testified that the house had belonged to his recently deceased mother and that he had listed it for sale on June 5, 2018. On June 15, 2018, while checking on the property, he noticed that there were "pry bar, crowbar marks" along the kitchen door of the house. As a result, he bought three motion detector game trail cameras and placed them in and around the house. On June 16, 2018, he returned to the house and saw that molding had been removed from the kitchen door, the doorknob was snapped off and one of the cameras was lying on a shelf. When he viewed the contents of one of the cameras, he saw that it had captured someone coming into the yard dressed in a hooded sweatshirt and carrying a backpack. It further showed the person putting gloves on and entering the enclosed back porch of the residence. The contents of the camera located inside the porch showed this same person trying to break into the kitchen door, pulling off his hood and placing his headlamp on, pulling the molding off the door and waving a crowbar in front of the camera. Lastly, the executor testified that he did not give defendant permission to be at the house and that no one was residing in the home on June 16, 2018. A detective with the Broome County Sheriff's Department testified that on June 16, 2018, he went to the Dickinson property to process the scene but did not find any evidence, due to defendant's use of gloves. The detective further testified that three days later, he conducted an interview with defendant, who admitted that he was the individual depicted in the camera images.
The caretaker of the Endicott property testified to the events on June 22, 2018. He stated that he saw a male on the property emerging from between the house and the garage. The caretaker observed "two big bags on [the person's] shoulders." He then followed the individual across the street to a car parked in the Dollar General parking lot. When the car left the lot, the caretaker got into his own vehicle and followed it. He obtained the license [*3]number of the vehicle and called 911. Later on, the police took him to Upstate Shredding-Weitsman Recycling (hereinafter Weitsman)[FN1] scrap metal yard where he identified defendant as the male he saw at the Endicott property. The caretaker further testified that when the police officer arrived at the Endicott property, he entered the building and found a basement window that was "busted out" and lying on the floor of the basement. He also found that copper pipes and drains were ripped out and removed from the basement. Lastly, the caretaker testified that he did not give permission for defendant to be at the building on June 22, 2018. A detective with the Endicott Police Department testified that he processed the Endicott property, took various photographs at the property, including that of a shoe print, the window that was pushed in and areas where copper pipes had been ripped out and removed from the basement. He also conducted an interview of defendant at Weitsman and confiscated the Nike sneakers that defendant was wearing as evidence. The detective testified that defendant's shoes matched the thread pattern of the shoe prints that he found at the property. Lastly, the detective testified that the bags found in defendant's possession contained, among other items, a telescoping lopper and a 17-inch offset ripping chisel. Defendant's fiancÉe testified that on the morning of June 22, 2018, defendant received a phone call, and then he asked her to take him to the Endicott property "to pick something up." She drove him there and parked in the Dollar General parking lot, and he exited the car and went across the street. She further testified that defendant was gone 5 to 10 minutes and, when he returned, he put a duffel bag in the trunk. Defendant then instructed her to go to Weitsman so he could "drop the scrap metal off."
Defendant testified that on June 16, 2018, between the hours of 2:00 a.m. and 3:00 a.m., he went to the Dickinson property after he was kicked out of his friend's apartment for using drugs because he had no place to go. He walked around for a while and went into the property, not to burglarize it but to "get out of the elements" and "to lay [his] head for the night and maybe a couple more nights, if [he] needed to." Defendant further testified that he had no intention of stealing copper from the Dickinson property, and that this was evident as "[his] loppers weren't with [him]" and, "[i]n order to be quiet about stealing copper, you needed the loppers." Defendant also testified that, although the bag on his back contained a crowbar and some gloves, as seen in the video, the purpose for the crowbar was to get him "inside the door." As to the Endicott property, defendant testified that he lacked the requisite intent to commit burglary or to possess burglar's tools, as he only cut through the property on his way to a different destination and he never went inside the building. Defendant further testified that he found [*4]the bag containing the tools in plain sight, grabbed it and then headed toward the direction of the vehicle. He did not open the bag until after he got to Weitsman and he had no knowledge of its contents prior to opening it.
Initially, as to defendant's contention that the Dickinson property is not a dwelling, this Court has previously determined that an "attached, . . . enclosed porch is part of the dwelling because it is structurally and functionally a part of the house" for purposes of a burglary conviction (People v Rivera, 301 AD2d 787, 788 [2003] [internal citations omitted], lv denied 99 NY2d 631 [2003]; see People v Lancaster, 200 AD3d 1352, 1355 [2021]). Further, a dwelling does not lose its characteristic as such simply because an occupant is temporarily absent (see People v Jones, 155 AD3d 1111, 1112 [2017], lv denied 31 NY3d 984 [2018]). The Dickinson property had been utilized and occupied as a residence for many years and could have been occupied on the night of the burglary (see People v Sheirod, 124 AD2d 14, 18 [1987], lv denied 70 NY2d 656 [1987]). Moreover, a "building retains its character as a dwelling despite the death of the occupant when it has been used as a residence in the immediate past" (People v Barney, 294 AD2d 811, 813 [2002] [internal quotation marks and citations omitted], affd 99 NY2d 367 [2003]).
Defendant's assertion that he did not have the intent to commit a crime and did not take anything from the Dickinson property lacks merit as intent to commit a crime may be inferred from the circumstances of the intruder's unlawful entry, unexplained presence at the premises, and actions and statements when confronted by police or the property owner (see People v Vasquez, 71 AD3d 1179, 1180 [2010], lv denied 14 NY3d 894 [2010]). As to this property, the trail camera photographs depicting defendant wearing a hoodie with the hood up and gloves, using a head lamp and pry bar while removing molding on the door and snapping off the door knob, coupled with the executor's testimony that he did not give permission for defendant to be at or in the house was legally sufficient evidence to establish defendant's intent to burglarize the property (see People v Ostrander, 46 AD3d 1217, 1218 [2007]; People v Armstrong, 11 AD3d 721, 722 [2004], lv denied 4 NY3d 760 [2005]). As to the Endicott property, the testimony of the caretaker and police detective, the photographs depicting the ransacked condition of the building, the kicked in window, defendant's sneaker matching the footprint found inside the building and defendant's unauthorized presence was legally sufficient to establish burglary in the third degree (see People v Stetin, 167 AD3d 1245, 1248 [2018], lv denied 32 NY3d 1178 [2019]); People v Johnson, 38 AD3d 1057, 1058 [2007]; People v Payne, 233 AD2d 787, 789 [1996]). As to possession of burglar's tools, the loppers and pry bar found in the bag in defendant's exclusive possession and the photograph depicting defendant [*5]holding the pry bar that was used to attempt to get into the Dickinson property create inferences of intent that are legally sufficient to establish possession of burglar's tools (see People v Latnie, 180 AD3d 1238, 1243 [2020]; People v Woodrow, 91 AD3d 1188, 1190 [2012], lv denied 18 NY3d 999 [2012]).
As to the weight of the evidence, a different verdict would not have been unreasonable had the jury believed defendant's testimony that he did not intend to commit the burglaries, was unaware of the contents of the bag and there were no eyewitness or DNA evidence placing defendant inside the Endicott building. However, according deference to the jury's credibility determination and viewing the evidence in a neutral light, we find that the convictions were not against the weight of the evidence (see People v Walker, 191 AD3d at 1158; People v Saylor, 173 AD3d at 1492).
Defendant contends that he was deprived of a fair trial due to prosecutorial misconduct. To that end, he contends that the People misstated numerous pieces of evidence, shifted the burden of proof, referred to defendant as a liar and aroused the sympathy of jurors. Defendant's contention is unpreserved for our review as defendant failed to raise timely and specific objections at trial (see People v Pitt, 170 AD3d 1282, 1284-1285 [2019], lv denied 33 NY3d 1072 [2019]). Were these issues before us, we would find that the People did not engage in a flagrant and pervasive pattern of prosecutorial misconduct as to require reversal (see People v Andrade, 172 AD3d 1547, 1553 [2019], lvs denied 34 NY3d 928, 937 [2019]; People v Cole, 150 AD3d 1476, 1482 [2017], lv denied 31 NY3d 1146 [2018]; People v McCombs, 18 AD3d 888, 890 [2005]).
Defendant next contends that he received ineffective assistance of counsel because his attorney, among other things, only objected twice during the trial, misstated numerous details of the case, failed to impeach witnesses and committed errors that cut against their planned strategy. "[I]n order to sustain a claim of ineffective assistance of counsel, a court must consider whether defense counsel's actions at trial constituted egregious and prejudicial error such that the defendant did not receive a fair trial. A claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Stover, 178 AD3d 1138, 1147 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1163 [2020]). A review of the record reveals that defense counsel effectively cross-examined the People's witnesses, pursued a strategy from the beginning that counsel acknowledged on the record was unorthodox — but was nonetheless his client's theory — called witnesses for the defense, gave cogent opening and closing statements consistent with defendant's strategy and otherwise presented a zealous defense. Thus, we [*6]find that defendant received the effective assistance of counsel (see People v Porter, 184 AD3d 1014, 1019 [2020], lv denied 35 NY3d 1069 [2020]; People v Kelsey, 174 AD3d 962, 966 [2019], lv denied 34 NY3d 982 [2019], cert denied ___ US ___, 141 S Ct 2607 [2021]).
Defendant lastly asserts that the sentence imposed was harsh and excessive because County Court failed to adequately consider mitigating factors, such as, among other things, the traumatic events that occurred during his childhood and his drug addiction. "A sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Gilmore, 177 AD3d 1029, 1030 [2019] [internal quotation marks and citation omitted], lvs denied 35 NY3d 970 [2020]; see People v Cole, 150 AD3d at 1482). Contrary to defendant's assertion, the record reflects that County Court considered the relevant sentencing factors, including defendant's childhood, background, drug addiction and criminal history. Moreover, the court considered its belief that defendant testified falsely. Under these circumstances, we discern no basis upon which to disturb the sentence imposed (see People v Gilmore, 177 AD3d at 1030; People v Coppins, 173 AD3d 1459, 1464 [2019], lv denied 34 NY3d 929 [2019]; People v Woods, 166 AD3d 1298, 1300 [2018], lv denied 33 NY3d 1036 [2019]).
Egan Jr., J.P., Lynch and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although the caretaker testified that the police took him to Weitsman Steel, the facility's correct name is Upstate Shredding-Weitsman Recycling.