[941 NE2d 739, 915 NYS2d 896]

The People of the State of New York, Respondent, v Peter Wells, Appellant.

Argued November 15, 2010; decided December 14, 2010

**APPEARANCES OF COUNSEL**

*Peter Wells,* pro se, and *Appellate Advocates,* New York City (*Kendra L. Hutchinson* and *Lynn W.L. Fahey* of counsel), for Peter Wells, appellant.

*Richard A. Brown, District Attorney,* Kew Gardens (*Donna Aldea* and *Gary Fidel* of counsel), for respondent.

MEMORANDUM.

The order of the Appellate Division should be affirmed.

At trial, after some but not all jurors had been sworn, and while voir dire was ongoing, one of the sworn jurors advised a court officer that there was important information he neglected to tell the court. When questioned, the juror revealed that he worked the night shift and would be coming to court directly from work, raising concerns about his ability to stay awake during the trial (the juror explained that he had slept in the jury room the day before). Defense counsel argued that the juror was able to serve and could be ordered not to work nights until the trial ended. The court declined to issue such a directive and excused the juror based on a finding that he would be unable to remain sufficiently alert during court proceedings. We cannot say that the trial court—which was in the best position to assess the juror's level of attentiveness—abused its discretion in discharging the juror after determining that he would be incapable of properly performing his duties.

On appeal, citing differences between the language in CPL 270.15 and 270.35, defendant asserts that the court lacked the authority to discharge the juror under the purportedly more narrow language in CPL 270.15. But defendant never referred to CPL 270.15 or relied on any restrictive statutory language in the trial court. Instead, defendant essentially argued against an incapacity discharge, contending that the juror was "able" to serve. Thus, defendant's current claim is not preserved for our review. The dissent engages in an analysis of the differences between CPL 270.15 and 270.35—but neither party raised an argument in the trial court warranting such a discussion. Nor do we find, as the dissent suggests, that a court has "inherent authority" to discharge a sworn juror based on competing work commitments. CPL 270.15 permits discharge of a sworn juror based on incapacity and the discharge here emanated from the trial court's concern that the juror would be incapable of remaining awake and attentive during the trial—an essential prerequisite of proper jury service.

Defendant's contention relating to the trial court's failure to charge an affirmative defense is similarly not preserved for review and his remaining pro se claims do not require reversal. Finally, we reject defendant's challenge to the constitutionality of his adjudication as a persistent violent felony offender and persistent felony offender (*see People v Bell*, 15 NY3d 935

[2010] [decided today]; *People v Quinones*, 12 NY3d 116 [2009], *cert denied* 558 US —, 130 S Ct 104 [2009]).

Chief Judge LIPPMAN (dissenting). After answering with evident comprehension and even alacrity[1] numerous questions put to him by the court and the parties, the juror at issue was found acceptable and sworn. Although the voir dire of the juror ranged over numerous subjects, including the nature of his employment, no inquiry was made of him, and he did not volunteer information, as to the hours during which he worked or whether jury service would for him entail financial hardship. It subsequently came to the court's attention, through a court officer, that the juror was employed at night. The court then inquired of the juror and learned that he worked as a per diem temp employee at a bank from midnight to 8:00 A.M. five nights a week and that, although he then felt "fine," on a given day he might have difficulty concentrating at trial after working at night. The parties' ensuing re-examination of the juror disclosed that he would lose income if he did not work and that he preferred not to remain on the case because, as he put it, "at this time I still have to pay my bills." The court did not ask the juror whether he intended to work during the trial. Instead, he asked him to confirm that it would be an economic hardship if he did not work, and the juror obliged.

Out of the juror's presence, defense counsel opposed his discharge:

"I think [the juror] should remain on the jury. It is his civic obligation. If he [*sic*] started to extend this sort of rationale to the entire panel we would probably lose half of them. So many people now are independent contractors and they don't necessarily work for employers who extend those sort of benefits, paid jury service.

"This trial we know is going. It may very well be done by Friday, so now it is Tuesday, so what is the worse [*sic*] that is going to happen to [this juror]? He's going to be out three days without pay, if he stays out, and furthermore, he said for the last two days he said I'm not out of it, that is what he said. He was able to follow the voir dire and the questions that I was asking and Miss Buchter [the

---

1. The juror, after being greeted and asked by the court if he was settled, replied "I'm good. You don't have to ask me all of that stuff, I agree."

prosecutor] was asking, so I think *he is perfectly suitable and able*" (emphasis added).

The prosecutor responded that although she "did initially like this juror," she wished that he had disclosed his financial situation before he had been selected and now thought that economic pressure might interfere with his fairness and impartiality.

The court remarked that he too wished the juror had spoken up sooner. He, nonetheless, expressed the view that the juror's need to work would be difficult to reconcile with the attentional demands of jury service and on that ground discharged the juror, contemporaneously noting defendant's exception for the record.

Defendant argues that the court was without authority to discharge a sworn and able juror. The argument is premised upon CPL 270.15 (3), which provides in relevant part, "[i]f before twelve jurors are sworn, a juror already sworn becomes unable to serve by reason of illness or other incapacity, the court must discharge him or her and the selection of the trial jury must be completed in the manner prescribed in this section." Contrary to the majority's characterization, defendant's argument does not rely on CPL 270.35.[2] Defendant's argument, fully preserved by his objection to the discharge of a "perfectly suitable and able" juror, is rather that the standard set forth in CPL 270.15, i.e., inability to serve, must control because, in the context of a statutory scheme comprehensively dictating the procedure for the qualification and disqualification of jurors, it alone articulates the grounds for disqualifying sworn jurors prior to the commencement of trial.

The main strain of the People's response to this argument has not been that the juror was in fact unable to serve (although that improbable contention is eventually made) but that had he been discharged after the jury's empanelment the statutorily available grounds for discharge would have been more numerous. It is, in this connection, postulated that the grounds for juror discharge should be understood generally to narrow as the proceedings progress and, accordingly, that, even though the express statutory grounds for preempanelment discharge are fewer, they are really at least as numerous and inclusive as the

---

**2.** Ironically, the significance of that provision, governing postempanelment discharges, in relation to CPL 270.15 (3), only became an issue in this litigation when the People urged for the first time on appeal that the discharge standards set forth in the two provisions were essentially interchangeable.

postempanelment grounds set forth in CPL 270.35. That statute provides, in relevant part:

> "If at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service, or the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial, the court must discharge such juror" (CPL 270.35 [1]).

The People's argument is flawed, both because it is wrong to assume that the Legislature did not intend to limit the grounds for preempanelment juror discharge as it evidently did, and because even if there were some reason to suppose that the additional discharge grounds available under the postempanelment provision were available as well prior to empanelment, there would still have been no basis for the subject juror's discharge.

Jury selection is for the parties, not the court. And, of course, particular care must be taken during jury selection in criminal proceedings to assure that judicial involvement does not intrude upon the defendant's "constitutional right to a trial by a particular jury chosen according to law, in whose selection [the defendant] has had a voice" (*People v Buford*, 69 NY2d 290, 297-298 [1987] [internal quotation marks and citations omitted]). While jury selection is underway, the parties, subject only to the procedural limitations imposed by statute, are accorded nearly plenary control over the jury's constitution. It is their prerogative to determine through the exercise of peremptory and for cause challenges who among the venire will and will not judge their case. The role of the judge respecting the parties' selections is, prior to the trial's commencement, commensurately circumscribed precisely as set forth in CPL 270.15 (3); he or she may not interfere with the parties' choices unless it is manifest that an agreed-upon and sworn juror is unable to serve by reason of illness or other incapacity.

Once the jury is fully constituted and empaneled, the judge's role becomes more complex. He or she must, while continuing to honor the parties' jury selections to the extent possible, shepherd the trial towards a verdict and respond to developments impairing the integrity of the proceeding. It is to meet these

responsibilities arising only after empanelment that a judge is accorded new power pursuant to CPL 270.35 to discharge jurors who become unavailable for continued service, or who prove, based on information not disclosed during jury selection, to be grossly unqualified, or who have engaged in gross misconduct not necessitating a mistrial. These powers are uniquely keyed to the demands of an unfolding trial; they are completely unnecessary and therefore not afforded in the context of jury selection. But even if they were, they would not avail the People in their defense of the discharge at issue.

There is no suggestion that that discharge could have been supported upon the ground of gross misconduct and it is manifest that the juror was not grossly unqualified—there is absolutely no indication that he was biased or incapable of rendering an impartial verdict. Nor does the record disclose any ground to suppose that he was "unavailable for continued service." It is true, of course, that he preferred not to remain on the jury. But that is a preference doubtless shared by very many jurors—it cannot support an inference of unavailability unless the statute is to be read to require the wholesale discharge of sworn jurors (see People v Michael, 48 NY2d 1, 10 [1979]). Similarly inadequate to support an inference of unavailability was the circumstance that this juror would perhaps have been forced during the trial to choose between his employment and his civic obligations. Jurors routinely have this choice forced upon them and in making it suffer some economic loss and even some measure of hardship, but again, this cannot be deemed tantamount to unavailability pursuant to CPL 270.35; once a finding of unavailability is made, the court *must* under the statute discharge the juror and the practical result of mandated discharges based on such a common incident of jury service, would be the utter decimation of the jury pool. This juror was not by reason of his nighttime employment any more unavailable than a juror employed during the day. Indeed, the court's conclusion as to his unavailability appears to have been paradoxically premised upon the circumstance that the juror had an option ordinarily foreclosed to jurors with day jobs, i.e., temporarily discharging both his jury and employment duties. Manifestly the prospect that the juror might elect to do both did not render him unavailable. The expectation of the court should have been that this juror, like any other ordinarily employed person called to serve on a jury and selected for that purpose without mention of any hardship that such service would entail,

would make the adjustments temporarily required to facilitate the discharge of his civic duty. This is particularly so since, as defendant's counsel noted, the trial was not expected to be lengthy.

When all is said and done neither the applicable statute, CPL 270.15, nor its inapplicable cousin, CPL 270.35, furnishes a basis for this juror's discharge and the People are reduced to arguing not simply that the power of discharge afforded under the former is equal to that afforded under the latter, but that CPL 270.15 is not a limiting provision at all—that it simply states when a juror must be discharged, not when a juror may be discharged. Indeed, the People urge that a court should be deemed to possess inherent authority to discharge a sworn juror so long as there is a "valid, cogent reason," other than illness or incapacity. This, it appears despite the majority's disclaimer, is the position that this Court today embraces when it concludes that a court has discretion to discharge a sworn juror as unavailable because of competing work commitments. There was, after all, no other reason for the discharge. Contrary to the majority's suggestion, there is absolutely nothing in the record to suggest that the juror manifested any present incapacity; the discharge was based solely on the court's speculation that if the juror both worked and served on the jury he might not be attentive.

Leaving aside the circumstance that, as noted, most jurors have such commitments and that by deeming such commitments grounds for a sworn juror's discharge the majority has in its unsigned memorandum freighted into the law broad judicial power fundamentally at odds with a defendant's normative right to retain the jurors he or she has selected, it has long been the rule that jury selection is strictly governed by statute: "The law prescribes the qualifications of jurors. The court cannot add to, or detract from them. It cannot itself select the jury, directly or indirectly" (*Hildreth v City of Troy*, 101 NY 234, 239 [1886]). There is no statutory authorization for power of the sort hypothecated by the majority. The governing statute mandates the discharge of sworn jurors in closely defined circumstances; nowhere does it provide for the discretionary discharge of a juror, much less for discharge whenever the court believes that there is a "valid, cogent reason" to dispense with a juror's services. Manifestly, such open-ended discretionary power is not inferable from the statute's narrowly drawn discharge mandate. The proper inference is precisely to the contrary. We have, in

fact, held that the only permissible challenge to a sworn juror is a challenge for cause pursuant to CPL 270.15 (4). Indeed, we have held that the "express provision for the exercise of a challenge for cause after a juror is sworn [provided by section 270.15 (4)] must be taken as a legislative direction that any other type of challenge to a sworn juror is impermissible" (*People v Harris*, 57 NY2d 335, 349 [1982]). By parity of reasoning, the express provision in the same encompassing statute of grounds upon which a sworn but not yet empaneled juror may be discharged must be taken as excluding other grounds in justification of the same purpose. The majority's unexplained contrary approach essentially sanctions a juror challenge upon grounds that would, until now, have sufficed only to sustain peremptory disqualification. This is not compatible with the statute (*see id.*).

The People's remaining argument is that the juror was subject to challenge and discharge for cause pursuant to CPL 270.15 (4). The argument, however, is completely unpreserved, never having been made before the trial court[3] or even raised at the Appellate Division, and, in any event, without merit. There was no basis for the court to conclude, as the People lately contend, that the juror's mental state was "likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). The speculation that if he both worked and sat on the jury he might be inattentive did not warrant the conclusion that he was *likely* to render a biased verdict and, in fact, the court did not make any such finding.

· Were I not of the view that reversal was required by reason of the juror's improper discharge, I would vote to remit the matter for resentencing. While I believe that defendant's sentencing as a persistent violent felony offender may be compatible with the rule of *Apprendi v New Jersey* (530 US 466 [2000]) in light of *Almendarez-Torres v United States* (523 US 224 [1998]), for the reasons stated in my partial dissent in *People v Battles* (16 NY3d 54, 59 [2010]) I cannot conclude that his sentencing as a persistent felony offender under New York's discretionary sentencing statute (CPL 400.20 [1]) is capable of surviving constitutional scrutiny.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN dissents in an opinion.

---

**3.** The closest the trial assistant came to even hinting at a challenge for cause was when, after defendant's counsel objected to the juror's discharge, she observed that his work situation "*may* interfere with him being a fair and impartial juror" (emphasis added). This does not state a ground for a for cause challenge to a sworn juror.