Warner v Kain (2020 NY Slip Op 05101)





Warner v Kain


2020 NY Slip Op 05101


Decided on September 24, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 24, 2020

529488

[*1]Lowell T. Warner et al., Appellants,
v
Kyle E. Kain et al., Respondents.

Calendar Date: August 19, 2020

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Pritzker, JJ.


Pritzker, J.



Pritzker, J.
Appeals (1) from a judgment of the Supreme Court (Richards, J.), entered March 7, 2019 in St. Lawrence County, upon a verdict rendered in favor of defendants, and (2) from an order of said court, entered February 28, 2019 in St. Lawrence County, which denied plaintiffs' motion to set aside the verdict.
In June 2012, defendant Kyle E. Kain (hereinafter Kain) was operating a vehicle owned by defendant John E. Kain when Kain collided into the rear of a vehicle stopped at a red light. The impact of that collision forced the stopped vehicle to collide with the car in front of it, which was operated by plaintiff Lowell T. Warner. Warner and his wife, derivatively, commenced this action seeking to recover for injuries he allegedly sustained during the accident. Defendants conceded negligence, and the matter proceeded to a jury trial on the issues of causation and whether Warner sustained a serious injury under Insurance Law § 5102 (d), and, if so, the amount of damages to be awarded. The jury rendered a verdict in favor of defendants, finding that Warner did not sustain a serious injury. Plaintiffs moved to set aside the verdict, which Supreme Court denied. The court then entered a judgment upon the verdict in favor of defendants. Plaintiffs appeal from the judgment and the order denying their postverdict motion.
Plaintiffs contend that Supreme Court erred in denying their motion to set aside the jury verdict. Under CPLR 4404 (a), "the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence." In order to award a judgment as a matter of law, the moving party must establish "that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; accord Matter of Fraccaro, 161 AD3d 1275, 1276 [2018], lv denied 32 NY3d 911 [2018]). To set aside a verdict as against the weight of the evidence, "the evidence [must] so preponderate[] in favor of the moving party that it could not have been reached on any fair interpretation of the evidence" (Killon v Parrotta, 28 NY3d 101, 107 [2016] [internal quotation marks, brackets and citations omitted]; see Towne v Kingsley, 163 AD3d 1309, 1310 [2018]). "It is not enough to show that a different verdict would be reasonable since the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Fallon v Esposito, 35 AD3d 1067, 1068 [2006] [internal quotation marks and citations omitted]; accord Maksuta v Heitzman, 165 AD3d 1550, 1551 [2018]).
Serious injury within the meaning of the Insurance Law includes, as relevant here, "a fracture; . . . permanent consequential limitation of use of a body organ or member; [or] significant limitation of use of a body function or system" (Insurance Law § 5102 [d]). When a plaintiff relies upon the permanent consequential limitation and/or significant limitation of use categories, such claims must be grounded upon "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing [the] plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system" (Raucci v Hester, 119 AD3d 1044, 1045-1046 [2014] [internal quotation marks and citations omitted]; accord Davis v Cottrell, 101 AD3d 1300, 1301 [2012]). Additionally, "[t]he curtailment of [a] plaintiff's daily activities must be to a great extent rather than some slight curtailment" (Baker v Thorpe, 43 AD3d 535, 537 [2007] [internal quotation marks and citation omitted]).
At trial, plaintiffs' case relied predominantly on Warner's testimony, medical records and the expert testimony of Douglas Kirkpatrick, an orthopedic surgeon who conducted an independent medical examination (hereinafter IME) of Warner. Warner described the accident, his subsequent medical treatment and the impact that the injury had on his usual daily activities. As to the accident itself, Warner testified that damage to his vehicle was estimated to be $1,100 and that, after the accident, he drove himself to the hospital, where X rays were taken; the X rays did not disclose any injury. Several weeks later, he sought treatment and was referred to physical therapy, which he attended for about six months, and he thereafter received chiropractic treatment for three years. Warner also testified that, because of the accident, he can no longer ski and snowboard and that, prior to the accident, he played golf five to six times a week, but now he is limited to just once a week with friends. Additionally, Warner claimed that he can no longer play or coach hockey with his children, or hunt or travel as he did prior to the accident. However, on cross-examination, Warner admitted that he was playing golf two to three weeks after the accident, that he continued to play in a golf league, and that, in 2018, he won an award for being able to drive the ball the farthest out of 24 other participants. He also testified that, on more than one occasion, he had climbed into a tree stand while hunting. With respect to his ability to work, Warner stated that the accident impaired his ability to perform work-related activities, which involved managing multiple properties.
Several diagnostic reports were received into evidence that specifically stated that Warner had no fracture or dislocation. Medical records from the emergency room the day of the accident reveal that X rays taken that day of Warner's cervical, thoracic and lumbar spine confirm that there was no clear evidence of a significant traumatic condition or fracture. Kirkpatrick provided expert testimony based in part on these reports, as well as physical therapy records, chiropractic treatment records and his own 2018 examination of Warner. Ultimately, Kirkpatrick concluded that, as a result of the accident, Warner suffers from lower back deficiencies, including a bilateral pars interarticularis defect and spondylolisthesis. He further opined that Warner sustained a permanent injury to his lumbar spine, that said injury consequentially caused a permanent limitation and that the injury was causally related to the subject accident. On cross-examination, Kirkpatrick admitted that the word "fracture" was never used in his report or in any of the imaging reports, and that an MRI conducted in 2012 explicitly stated "no fracture seen."
Plaintiffs' argument on appeal is that the only medical testimony presented at trial was that of Kirkpatrick, whose testimony established that Warner "sustained a bilateral fracture to the pars interarticularis at L5" and, thus, they are entitled to judgment as matter of law. Although plaintiffs are correct that defendants did not present any medical testimony to refute Kirkpatrick's conclusions, their assertion that failure to do so automatically entitles them to judgment as a matter of law is misplaced. A jury is not required to accept an expert's opinion as long as its decision not to do so is supported by some other evidence or cross-examination of the expert (see Calderon v Irani, 296 AD2d 778, 779 [2002]; Mechanick v Conradi, 139 AD2d 857, 859 [1988]; Herring v Hayes, 135 AD2d 684, 684 [1987]). Here, it cannot be said that Kirkpatrick's testimony unequivocally established that Warner sustained a fracture. In fact, Kirkpatrick's testimony on that particular issue vacillated. When asked by plaintiffs' counsel whether it was Kirkpatrick's opinion that Warner sustained a "pars fracture," Kirkpatrick responded that the "evidence is that there is clearly a deficiency in the pars on the X ray" (emphasis added). The report of that same X ray specifically notes that there is no fracture. On cross-examination, Kirkpatrick conceded that the word "fracture" did not appear anywhere in his IME report. Accordingly, there is a "valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Matter of Fraccaro, 161 AD3d at 1276; compare DiBenedetto v Abreu, 107 AD3d 840, 841 [2013]). As such, Supreme Court properly denied plaintiffs' request to enter judgment as a matter of law in their favor.
We are similarly unpersuaded by plaintiffs' argument that they are entitled to a new trial as the verdict is not supported by the weight of the evidence. Not only did Kirkpatrick's testimony fail to unequivocally establish that Warner sustained a fracture, but the evidence presented to support a finding of permanent consequential limitation of use of a body organ or member or significant limitation of use of a body function or system was limited to the chiropractic treatment notes that ultimately showed progress in Warner's range of motion over time. In addition, although Kirkpatrick made limited references to generally decreased ranges of motion during his examination of Warner, six years after the accident, testimony by Warner revealed that he continuously engaged in hunting and sports since the accident. Therefore, according great deference to the jury's credibility determinations, the evidence did not "so preponderate[] in favor of [plaintiffs] that it could not have been reached on any fair interpretation of the evidence" (Killon v Parrotta, 28 NY3d at 107; see Maksuta v Heitzman, 165 AD3d at 1551).
We also disagree with plaintiffs' contention that Supreme Court erred in denying their request for a missing witness charge as to two witnesses, Stewart Kaufman and Kain. We turn first to Kaufman, an orthopedic surgeon who conducted an IME on behalf of defendants. As the proponent of the missing witness charge, plaintiffs were required to "promptly notify the court that there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that such witness can be expected to testify favorably to the opposing party and that such party has failed to call him [or her] to testify" (People v Gonzalez, 68 NY2d 424, 427 [1986]; see Eagle Pet Serv. Co. v Pacific Empls. Ins. Co., 175 AD2d 471, 473 [1991], lv denied 79 NY2d 753 [1992]). Prior to trial, upon learning that defendants were not going to call Kaufman to testify, plaintiffs chose to issue a subpoena for Kaufman to testify on their behalf. When Kaufman failed to appear for trial, plaintiffs did not seek judicial enforcement of the subpoena [FN1] but instead opted to seek a missing witness charge. This set of circumstances begs the question of whether Kaufman was "missing" because defendants did not call him or because plaintiffs made a tactical decision not to pay his expert fee or otherwise seek enforcement of the subpoena (see CPLR 2308 [a]). Further, inasmuch as plaintiffs conceded that at least some aspects of Kaufman's IME report were favorable to defendants, such testimony was cumulative (compare DeVito v Feliciano, 22 NY3d 159, 166 [2013]; Leahy v Allen, 221 AD2d 88, 92 [1996]). Given these facts, we cannot find that Supreme Court abused its discretion in declining plaintiffs' request for a missing witness charge with regard to Kaufman.[FN2] As to Kain, plaintiffs also failed to meet their burden as they did not establish that Kain, who had already conceded negligence, possessed knowledge that was both noncumulative and material to the trial (see People v Brown, 139 AD3d 1178, 1179 [2016]).
Egan Jr., J.P., Clark, Mulvey and Devine, JJ., concur.
ORDERED that the judgment and order are affirmed, with costs.



Footnotes

Footnote 1: At oral argument, plaintiffs admitted that Kaufman did not comply with the subpoena because plaintiffs would not pay his witness fee.

Footnote 2: We also note that plaintiffs' counsel commented extensively on Kaufman's absence in closing arguments (see generally People v Pearson, 151 AD3d 1455, 1457 [2017], lv denied 30 NY3d 982 [2017]; Goverski v Miller, 282 AD2d 789, 791 [2001]).