Archer v Parlman (2025 NY Slip Op 01145)

Archer v Parlman

2025 NY Slip Op 01145

Decided on February 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 27, 2025

CV-23-2317
[*1]Joseph B. Archer, Individually and as Administrator of the Estate of Joan Gavigan Archer, Deceased, Respondent,
v
David L. Parlman et al., Appellants.

Calendar Date:January 8, 2025

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Pillinger Miller Tarallo, LLP, Elmsford (Robert J. Gironda of counsel), for appellants.
McCaffrey Baynes, PLLC, Albany (Kathleen McCaffrey Baynes of counsel), for respondent.

Clark, J.P.
Appeals (1) from an order of the Supreme Court (Richard Mott, J.), entered November 21, 2023 in Columbia County, which denied defendants' motion to set aside the verdict, and (2) from a judgment entered thereon.
On June 14, 2021, Joan Gavigan Archer (hereinafter decedent) was walking across a street in a crosswalk in the Village of Valatie, Columbia County, when she was struck by a sport utility vehicle (hereinafter SUV) driven by defendant David L. Parlman and owned by defendant Barry C. Parlman. As a result of the injuries sustained from the impact, decedent passed away later that day. Plaintiff, decedent's widower, commenced the instant action in his individual capacity and as administrator of decedent's estate, alleging negligence and wrongful death against defendants. Following joinder of issue, defendants conceded liability. The parties proceeded to a jury trial to determine the appropriate damages, after which the jury awarded plaintiff $150,000 for decedent's preimpact terror, $350,000 for decedent's conscious pain and suffering and $880,000 for plaintiff's economic loss. Thereafter, defendants moved pursuant to CPLR 4404 (a) to set aside the verdict and for a new trial to determine the appropriate damages. Supreme Court denied defendants' motion and entered a judgment in plaintiff's favor in accordance with the jury verdict. Defendants appeal from the order and the judgment.[FN1]
On appeal, defendants assert that the damages awarded by the jury are against the weight of the evidence and excessive. "A verdict may be successfully challenged as against the weight of the evidence if it can be shown that a preponderance of the proof presented at trial so strongly favored the losing party's case that a contrary verdict could not have been reached upon any fair interpretation of that evidence" (Pasternak v County of Chenango, 226 AD3d 1220, 1222 [3d Dept 2024] [internal quotation marks and citations omitted]; see Adirondack Classic Design, Inc. v Farrell, 182 AD3d 809, 811 [3d Dept 2020]). "It is not enough to show that a different verdict would be reasonable[,] since the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Warner v Kain, 186 AD3d 1844, 1845 [3d Dept 2020] [internal quotation marks and citations omitted]). In reviewing defendants' challenges to the sum of each award, we note that "the amount of damages to be awarded to a plaintiff for personal injuries is a question for the jury, and its determination will not be disturbed unless the award deviates materially from what would be reasonable compensation" (Streit v Katrine Apts. Assoc., Inc., 212 AD3d 957, 962 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Reynolds v State of New York, 180 AD3d 1116, 1122 [3d Dept 2020]).
An award for preimpact terror is intended to compensate for any emotional pain and suffering experienced by a decedent who became aware, however briefly, that he or she was about to suffer [*2]grave injury or death (see McKenna v Reale, 137 AD3d 1533, 1535 [3d Dept 2016]; Lang v Bouju, 245 AD2d 1000, 1001 [3d Dept 1997]; PJI 2:320). Here, video evidence shows that decedent was walking in a crosswalk and, in the moments before being struck by defendants' vehicle, she turned her head in the direction of the oncoming SUV and raised her hand in a defensive posture. In light of this, and in the absence of any contradictory proof, the jury's determination that decedent was aware that she was about to suffer grave injury or death is based on a fair interpretation of the evidence and, as such, its award of damages for preimpact terror is not against the weight of the evidence (see Lang v Bouju, 245 AD2d at 1001; see also McKenna v Reale, 137 AD3d at 1535; Boston v Dunham, 274 AD2d 708, 711 [3d Dept 2000]). We also disagree with defendants' contention that the preimpact terror award is excessive, as it does not materially deviate from what would be considered reasonable compensation (see e.g. Vargas v Crown Container Co., Inc., 155 AD3d 989, 993 [2d Dept 2017]; Lang v Bouju, 245 AD2d at 1001).
Also, as is relevant here, an award for conscious pain and suffering requires some "proof of cognitive awareness . . . in the interval between injury and death [and], when the interval is relatively short, the degree of consciousness, severity of pain, apprehension of impending death, along with duration, are all elements to be considered" in determining the appropriate sum for such award (Vatalaro v County of Suffolk, 163 AD3d 893, 895 [2d Dept 2018] [internal quotation marks and citations omitted]; see McKenna v Reale, 137 AD3d at 1535). Here, plaintiff proffered the testimony of a neurologist who reviewed the ambulance and hospital records for decedent. The neurologist observed that, according to those records, in the approximate 90 minutes following impact,[FN2] decedent opened and closed her eyes, made pained noises, repositioned her extremities and attempted to remove her cervical collar, among other things. Further, the neurologist noted that, as decedent lay on the ground at the scene of the accident, David Parlman saw decedent try to flip from her side to her back, and a State Police trooper reported that decedent squeezed her hand in response to the trooper's questions. The neurologist explained the difference between spontaneous bodily movements, which are made without regard to consciousness, and purposeful bodily movements, which require consciousness. Based on his review of the evidence, the neurologist opined, to a reasonable degree of medical certainty, that decedent's movements were purposeful and, as such, evinced consciousness following impact. As a fair interpretation of this evidence supports the finding that decedent experienced conscious pain and suffering, the jury's determination on that issue is not contrary to the weight of the evidence (see Schneider v Hanasab, 209 AD3d 684, 687 [2d Dept 2022]; Vatalaro v County of Suffolk, 163 AD3d [*3]at 895; compare McKenna v Reale, 137 AD3d at 1535). Further, we find no basis upon which to disturb the corresponding award, as it represents reasonable compensation under these circumstances (see e.g. Vatalaro v County of Suffolk, 163 AD3d at 895; Vargas v Crown Container Co., Inc., 155 AD3d at 993).
In addition, defendants argue that the jury erred in determining the duration and amount for its award of economic loss. A jury's award for a plaintiff's economic loss in a wrongful death action must correspond to the "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought" (EPTL 5-4.3 [a]; accord Hauser v Fort Hudson Nursing Ctr., Inc., 202 AD3d 45, 50 [3d Dept 2021]; Bynum v Camp Bisco, LLC, 198 AD3d 1164, 1167 [3d Dept 2021]). Contrary to defendants' contention, it is well-established that "[l]ife expectancy tables are simply statistical averages" and "not controlling" in a jury's factual determination of relevant life expectancies (PJI 2:320; see Lolik v Big V Supermarkets, 266 AD2d 759, 761 [3d Dept 1999]; Kastick v U-Haul Co. of W. Mich., 259 AD2d 970, 971 [4th Dept 1999]; Barone v Forgette, 286 App Div 588, 590 [3d Dept 1955]). In addition to the life expectancies of plaintiff and decedent at the time of decedent's death,[FN3] the jury was properly instructed to consider evidence it heard "concerning the health, habits, employment and activities" of plaintiff and decedent to determine the duration of any economic loss award (PJI 2:320). Here, plaintiff and a family friend provided information about plaintiff's health and both plaintiff's and decedent's habits, as well as decedent's employment and the compensable services that she rendered to plaintiff (see generally Gonzalez v New York City Hous. Auth., 77 NY2d 663, 668 [1991]), and expert testimony from an economist and a life care planner calculated the yearly cost of replacing decedent's services. Considering plaintiff's mobility issues and his lack of significant health issues, we disagree with defendants' contention that the amount and duration of the economic loss damages award is contrary to the weight of the evidence or excessive (see Kastick v U-Haul Co. of W. Mich., 259 AD2d at 971).
We likewise reject defendants' assertion that Supreme Court intentionally manipulated the jury and excluded a qualified juror. The court may, at its discretion, discharge a juror who "is unable to perform the duties of a juror" (CPLR 4106; see Mark v Colgate Univ., 53 AD2d 884, 886 [2d Dept 1976]; see also Alaimo v General Motors Corp., 32 AD3d 627, 629 [3d Dept 2006]). Prior to jury deliberations, plaintiff moved to disqualify a juror based on counsel's observation that the juror had fallen asleep. Supreme Court noted that it had observed that particular juror falling asleep on several occasions throughout the trial, and that it would not permit the juror to deliberate in the instant matter. Under these circumstances[*4], we find that Supreme Court did not abuse its discretion when it excluded the sleeping juror from deliberating (see Alaimo v General Motors Corp., 32 AD3d at 629; cf. People v Wells, 15 NY3d 927, 928 [2010], cert denied 565 US 828 [2011]; People v Mansfield, 223 AD3d 1111, 1115 [3d Dept 2024], lv denied 42 NY3d 928 [2024]).
As to defendants' claim of jury confusion, we simply note that the verdict sheet and Supreme Court's charge to the jury closely mirrored the relevant pattern jury instructions, and nothing in the record reflects "substantial confusion among the jurors in reaching a verdict" (Prediletto v Syed, 166 AD3d 1456, 1463 [3d Dept 2018] [internal quotation marks and citations omitted]; see Matter of State of New York v James Z., 97 AD3d 1046, 1048 [3d Dept 2012], lv denied 20 NY3d 853 [2012]). Defendants' remaining contentions, to the extent not expressly addressed herein, have been examined and found to be lacking in merit.
Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the appeal from the order is dismissed, with costs.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: Defendants' appeal from the order denying their motion to set aside the verdict must be dismissed, as their right to appeal therefrom terminated upon entry of the final judgment; however, their appeal from said judgment also brings up the order for review (see Piccirilli v Benjamin, 226 AD3d 1233, 1235 n [3d Dept 2024]; Wilcox v Newark Val. Cent. Sch. Dist., 129 AD3d 1230, 1231 n 1 [3d Dept 2015], lv dismissed 26 NY3d 1060 [2015]).

Footnote 2: It is uncontroverted that decedent was anesthetized for surgery about 90 minutes after being struck by the vehicle and that she never regained consciousness.

Footnote 3: Plaintiff's life expectancy was calculated to be 6.22 years, while decedent's was 10.9 years.